**Fidel B. IBARRA, Jr., et al.**

v.

**TEXAS EMPLOYMENT COMMISSION, et al.**

**Civ. A. No. L–83–44–CA.**

United States District Court, E.D. Texas, Lufkin Division.

Aug. 25, 1986.

---

Richard S. Fischer, Nacogdoches, Tex., Kristine Poplawski, Farmworker Justice Fund, Inc., Washington, D.C., for plaintiffs.

Steve Zanowic, Federation for American Immigration Reform, Washington, D.C., for amicus curiae.

Suzanne Formby, Asst. Atty. Gen., Austin, Tex., for defendants.

Ruth Yeager, Asst. U.S. Atty., Tyler, Tex., Robert G. Damus, Leslie K. Dellon, Dept. of Justice, Civ. Div., Thomas W. Hussey, Ellen Sue Shapiro, Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., for the U.S.

## MEMORANDUM OPINION AND ORDER

JUSTICE, Chief Judge.

The defendants, the Texas Employment Commission, its chairperson, and its two commissioners ("TEC"), seek to set aside the final consent decree that was prelimi-

narily approved in this civil rights class action on April 17, 1986, or, alternatively, seek a ruling on the legality of the consent decree. Also pending for consideration is the question of final acceptance of the settlement agreement, which has been recommended for approval by the magistrate who presided over the fairness hearing.

## I.

Fidel B. Ibarra, Jr., and Mario Esparza, lawful permanent residents of the United States, sued the TEC in 1983 for its refusal to award them unemployment benefits. They challenged the state requirement that all applicants for unemployment compensation must produce documents showing that the Immigration and Naturalization Service ("INS") has authorized them to work. The state required alien claimants to submit proof of written evidence that the INS had authorized them to work during the period they earned wage credits and during the weeks they requested unemployment compensation benefits. Final Pre-Trial Order 18. After a hearing on the maintainability of this action as a class action, a class was approved consisting of "all past, present, and future individuals who have been denied unemployment benefits in Texas because of their inability to produce INS work authorization." *Ibarra v. Texas Employment Commission,* 598 F.Supp. 104, 110 (E.D.Tex.1984). A partial consent decree was entered in November 1985, that resolved all issues except the proper interpretation of a statutory section that provides for payment of unemployment compensation to aliens "permanently residing in the United States under color of law."[1]

Subsumed under that issue is whether the TEC's requirement of employment authorization denies benefits to aliens who are permanent residents under color of law.

On the eve of a hearing scheduled on the plaintiffs' motion for a preliminary injunction, the state moved to join the United States Department of Labor ("DOL") and the INS as defendants. The federal agencies were added as defendants, and they moved for their dismissal from the litigation. The state then sought leave to file cross-claims against the federal defendants. All of the parties filed memoranda and participated at a hearing on whether the federal agencies should remain as parties. A fifteen-page memorandum opinion and order dismissed the federal agencies, finding that the DOL and INS were not parties who should be joined under Fed.R. Civ.P. 19 as persons needed for just adjudication. Order of January 10, 1986, at 2. In addition, the order denied the state's request to file supplemental pleadings against the two agencies on the grounds that the state had delayed nearly three years before filing its third-party complaint, the granting of the motion would harm the plaintiffs or the Department of Labor, and the state could adequately protect its interests without the third-party complaint. *Id.* at 14. The two federal agencies were designated as *amici curiae* and asked to submit a brief.

The case was called for trial on February 18, 1986, and opening statements were heard. At that time, the TEC announced that it would no longer require INS work authorization during the period the claimant earned wage credits.[2] Its change of

---

1. The challenged statute provides that:

 compensation shall not be payable on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time such services were performed, was lawfully present for purposes of performing such services, *or was permanently residing in the United States under color of law at the time such services were performed (including an alien who was lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the*

*Immigration and Nationality Act [8 U.S.C. § 1153(a)(7) or § 1182(d)(5) ]).*

 26 U.S.C. § 3304(a)(14)(A) (emphasis added); Tex.Rev.Civ.Stat.Ann. art. 5221b–1(h) (Vernon Supp.1986).

2. The State of Texas requires claimants to earn a minimum amount of wage credits during their base period in order to become eligible for unemployment compensation. *See* Tex.Rev.Civ. Stat.Ann. art. 5221b–2(e) (Vernon Supp.1986). The base period is the period of employment during which eligibility for unemployment benefits is determined. In Texas, the first four of

position was attributed to the federal government's brief that stated that work authorization was an additional state requirement not mandated by federal law or the DOL. *See* Memorandum of Amicus Curiae United States Department of Labor and United States Immigration and Naturalization Service 6–7 (hereinafter cited as Federal Amici Memorandum). In connection with its requirement that an alien applicant produce work authorization to prove his availability for work while he received benefits, the state requested sixty days in which to formulate a policy.[3] The state additionally requested the joinder of the Department of Labor so that the plaintiffs, if they prevailed, could seek attorney's fees directly from the federal agency. The court encouraged the parties to discuss a settlement and, if agreement appeared possible, to submit the position of the TEC in writing.

The parties announced a week later that the case had settled. They submitted a proposed final consent decree that defined "permanently residing in the United States under color of law" to mean "aliens of whose presence in the United States the Immigration and Naturalization Service (INS) is aware *and* with regard to whom there has been an affirmative case-specific or class-specific determination that allows the alien to remain in the United States for an indefinite period of time." Final Consent Decree 4–5 (February 22, 1986). They also moved for preliminary approval of the settlement and for approval of the notice of the settlement to class members. Because the consent decree was unclear on several points, counsel for both parties were asked to clarify several questions regarding the notice of the proposed settlement to class members, the enforcement of the decree, and the length of time in which this court would retain jurisdiction. Their responses were incorporated into a second proposed final consent decree, which was submitted

on April 16, 1986, and preliminarily approved on the following day.

A month later the TEC moved to stay the proposed settlement hearing to enable the defendants to negotiate with federal officials concerning provisions of the consent decree that the DOL stated were inconsistent with federal law. Motion to Stay Proposed Settlement Hearing 2. The stay was denied because the state had already had sufficient time to consult with federal officials and because consent decrees cannot be rescinded by either party at will. Order of June 3, 1986.

A magistrate presided over the June 20, 1986, hearing on the fairness, reasonableness, and adequacy of the settlement. At the hearing, the state attempted to repudiate the agreement, but the magistrate found that he lacked the authority to receive evidence on the state's motion to set aside the consent decree. No class member or person representing a class member appeared to oppose the proposed settlement or filed a written objection or comment. The magistrate concluded that the parties had substantially complied with the order requiring notice of the settlement hearing and that "insofar as class members are concerned, the class action settlement should be approved." Report and Recommendation of the United States Magistrate 3–4 (hereinafter cited as Magistrate's Report). No objections to the magistrate's report were filed during the ten days after the parties received the report.

Following the hearing, the parties were given a month in which to submit further information concerning the proposed consent decree. Both plaintiffs and defendants took advantage of the opportunity, with the state submitting an affidavit from the person whose testimony it had sought to present at the June 20 hearing. In its filing, the state additionally objected to the magistrate's finding that he could not receive evidence on the motion to set aside

---

the last five quarters is the base period. Final Pre-Trial Order at 11.

**3.** Among the requirements in the Texas statute is that the unemployed individual must be "available for work" to receive benefits. Art. 5221b–2(d).

the consent decree. The plaintiffs, on the other hand, urged the denial of the defendants' attempt to repudiate.

## II.

Four months after entering into the settlement agreement and two months after submitting the revised final consent decree, the TEC filed its motion to set aside the final consent decree and reurge the joinder of the federal agencies as third-party defendants. The defendants contend that the TEC is merely a "pass-through" agency that must conform to federal law to receive federal funding and to enable Texas employers to receive tax benefits. Referring to a recent DOL letter that suggests the proposed consent decree violates federal law, the defendants urge that the Justice Department "is the appropriate agency to interpret federal law." Motion to Set Aside Final Consent Decree and to Reurge Joinder of Federal Agencies and Memorandum in Support Thereof 3–4.

### A. *Need for an Evidentiary Hearing*

■ In the supplement to their motion, the defendants request a hearing to argue the merits of their motion to set aside or, alternatively, a full evidentiary hearing on the motion. The TEC cites no authority for a hearing, other than its belief that the views of the parties deserve a full airing. Supplement to Defendants' Motion to Set Aside Consent Decree and Objection to Magistrate's Report from Hearing on June 20, 1986, at 2. When material facts concerning the existence of a settlement agreement are disputed, a district court should hold a plenary hearing to determine the enforceability of the settlement, rather than summarily enforcing it. *Pearson v.*

*Ecological Science Corp.*, 522 F.2d 171, 176 n. 5 (5th Cir.1975), *cert. denied sub nom. Skydell v. Ecological Science Corp.*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); *accord Lee v. Hunt*, 631 F.2d 1171, 1177 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 983, 71 L.Ed.2d 118 (1981). Summary enforcement of either a consent decree or a settlement agreement is ill-suited to complex factual issues related to the formation or the consummation of the settlement contract. *In re Corrugated Container Antitrust Litigation*, 752 F.2d 137, 143 (5th Cir.), *cert. denied*, —— U.S. —— 105 S.Ct. 3536, 87 L.Ed.2d 660 (1985).

■ The state fails to mention any factual dispute "which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve." *Id.* There is, for example, no disagreement concerning the formation or existence of the consent decree; the only factual dispute is whether the federal government changed its position between the signing of the memorandum of agreement in February and the DOL letter criticizing the decree in April. That issue, albeit complex, does not have to be resolved in order to enforce the decree. *See infra* pp. 1069–1070.

■ The state argues that the magistrate wrongfully concluded that he lacked the authority to receive evidence on the state's efforts to repudiate the settlement agreement.[4] The referral order designated the magistrate "to hear objections to and comments on the fairness, adequacy, and reasonableness of the proposed final consent decree." Order of June 9, 1986. The sole purpose of the hearing was to satisfy the provisions of Fed.R.Civ.P. 23. Magis-

---

**4.** A district court may adopt a magistrate's report when the parties do not file objections within ten days, *see Braxton v. Estelle,* 641 F.2d 392, 397 (5th Cir.1981), but the magistrate must first inform the parties that objections have to be filed within ten days after service of a copy of the report. *Deloney v. Estelle,* 679 F.2d 372, 373 (5th Cir.1982). In this action, the state's objection to the magistrate's finding is untimely since it was not filed within ten days of the receipt of the report by the state's attorney, as required by the statutory provision cited in the

order of appointment. *See* 28 U.S.C. § 636(b)(1). The TEC, through its attorney, received the report on July 3, 1986, but did not file an objection until July 18, 1986. Nevertheless, because the magistrate did not notify the parties of the length of time that they had to object to his findings or the consequences attending a failure to object, and the state filed its objections by the deadline set for further comments on the motion, the state's belated objection will be considered.

trate's Report at 3. Rule 23(e) requires the court's approval of the proposed dismissal or compromise of a class action, with the district court acting as a fiduciary who guards the rights of absent class members. *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (3rd Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). Since the state's attempted repudiation was not the type of objection or comment contemplated by Rule 23 or the order of appointment, the magistrate did not err in refusing to receive evidence on the state's disavowal of the decree. Even if the magistrate should have allowed the state to argue its motion, the error was remedied when the parties were given a later opportunity to present further information pertinent to the motion to set aside the final consent decree. The state submitted an affidavit by the TEC attorney, but provided no other evidence or any legal authority in support of its challenge. Having chosen to forego an opportunity to present in writing a full airing of its views, the state is not entitled to a hearing simply to advocate the same position.

## B. *Validity of the Final Consent Decree*

### 1. The Terms of the Decree [5]

The proposed final consent decree defines "permanently residing in the United States under color of law" to include eleven specific categories of aliens who are entitled to unemployment insurance benefits.[6] This construction applies to both wage credit and availability for work determinations under the Texas Act. Final Consent Decree at 9. The decree provides for a procedure by which the Texas Employment Commission, on request, will redetermine the claims for benefits of all individuals whose claims were denied on or after March 28, 1983, because they did not have employment authorization from the INS.

To notify claimants of their right to request redetermination, the TEC has agreed to mail a written notice to all aliens whose claims were denied for lack of employment

---

5. The final consent decree and the notice announcing the resolution of disputed issues did not include any provisions from the partial consent decree entered in 1985. The partial decree improves the procedures used to process applications for claims, appeals from the denial of all claims, and overpayments of claims. It also dismisses all claims for damages.

6. The decree enumerates the following categories of aliens as entitled to benefits:

A) Aliens who have received an affirmative case-specific determination from the INS that allows them to remain in the U.S. an indefinite period of time, including:
1) Aliens admitted as conditional entrants under § 203(a)(7) of the Immigration and Nationality Act;
2) Aliens paroled into the United States under § 212(d)(5) of the Immigration and Nationality Act;
3) Aliens granted deferred departure or extended voluntary departure;
4) Applicants for adjustment of status under § 245 of the Immigration and Nationality Act;
5) Applicants for or persons granted asylum or withholding of deportation under § 208 or § 243(h) of the Immigration and Nationality Act;
6) Applicants for or persons granted suspension of deportation under § 244(a) of the Immigration and Nationality Act;
7) Persons admitted to the United States as refugees under § 207 of the Immigration and Nationality Act;
8) Citizens of Cuba or Haiti afforded the status of "Cuban/Haitian Entrant—Status Pending"; and
9) Persons possessing an individualized assurance by the Immigration and Naturalization Service that they may remain indefinitely in the United States.
B) Aliens who are covered by a class-specific determination by INS that allows them to remain in the United States for an indefinite period of time, including:
1) Persons who are the beneficiaries of visa petitions as the children, spouses, or parents of citizens of the United States twenty-one (21) years of age or older; and
2) Persons who are the beneficiaries of visa petitions under § 203(a)(1) through (6) of the Immigration and Nationality Act, and who are entitled to priority dates not more than sixty (60) days later than the date shown in the latest Visa Bulletin published by the United States Department of State.
An alien claiming to be permanently residing in the United States under color of law cannot rest his claim solely upon the fact that the INS is aware of his whereabouts, and has not as yet taken steps to deport him.
Final Consent Decree at 4–5.

authorization, to publish an English-language version of the notice in the newspaper of greatest circulation in seventeen cities throughout the state for three consecutive months, and to post a notice in each of its offices for six months.[7] The plaintiffs have agreed to publish a Spanish-language version of the notice of the right to request a redetermination in the most frequently published Spanish-language newspaper in the same seventeen cities and to prepare and distribute a public service announcement to the Spanish-language network and radio stations in the state. *Id.* at 6–8.

The TEC has agreed to make all decisions on requests for redetermination in its main office in Austin. The TEC will revise its manual and provide staff training to prepare its staff for determining alien eligibility under the new policy. *Id.* at 9. Any denial of a request will be sent to the plaintiffs' attorney, who will review each decision and notify the claimant of his or her right to appeal, if the attorney believes that the TEC's decision was erroneous. The appeals procedure provided in the Texas Unemployment Compensation Act will be followed for any claimants whose benefits are denied on a request for redetermination. *Id.* at 9. The decree further provides that this court will retain jurisdiction for the six-month period during which class members may request redetermination. The agency will file both monthly reports and a final cumulative report on the number of requests received, the number approved, and the number denied. In the event of federal or state legislation that is inconsistent with the provisions of the decree, the parties have agreed to renegotiate the terms of the settlement agreement. The issue of attorney's fees has been severed. *Id.* at 10.

2. The Enforcement of Consent Decrees

 A settlement agreement is a contract, but becomes a court decree when incorporated into a judgment. *White*

*Farm Equipment Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir.1986). "Federal courts have held under a variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 35 (5th Cir.1967). An agreement that settles the dispute is as conclusive of the parties' rights as a judgment would be if the action had been litigated rather than settled by compromise. *Id.* (quoting *J. Kahn & Co. v. Clark,* 178 F.2d 111 (5th Cir.1949)). In determining whether to enforce a settlement, a court normally reviews whether the repudiating party gave knowing and voluntary consent to settle and whether his or her attorney had authority to accept the agreement. *See Worthy v. McKesson Corp.,* 756 F.2d 1370, 1372, 1373 (8th Cir.1985); *see also Pearson v. Ecological Science Corp.,* 522 F.2d 171, 175 (5th Cir.1975) (finding stipulation of settlement was binding when the terms of the agreement were fairly and adequately communicated to the plaintiffs, most plaintiffs knowingly accepted and ratified the agreement, and the remaining plaintiffs had authorized counsel to accept a settlement on their behalf), *cert. denied sub nom. Skydell v. Ecological Science Corp.,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976).

 There are exceptions to the general rule that a settlement agreement between adversary parties cannot be repudiated unilaterally. For example, a settlement contract reached by fraud, duress, or illegality may be voided. *See First National Bank v. Pepper,* 454 F.2d 626, 632 (2d Cir.1972). Similarly, a party may not be bound by a settlement that counsel enters into without authorization. *See, e.g., Pearson,* 522 F.2d at 175. And, a district court has discretion to modify a settlement agreement when there has been a significant change in circumstances since the consent decree was entered. *Environmental*

---

**7.** The cities are: Amarillo, Austin, Beaumont, Brownsville, Corpus Christi, Dallas, El Paso, Fort Worth, Harlingen, Houston, Laredo, Long-view, Lubbock, McAllen, Odessa, San Antonio, and Tyler.

*Defense Fund, Inc. v. Costle,* 636 F.2d 1229, 1240 (D.C.Cir.1980), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984). A bad bargain, however, is no justification for avoiding an agreement, *Worthy,* 756 F.2d at 1373, nor is a party's failure to fully comprehend all of the ramifications of a proposed settlement. *George v. Parry,* 77 F.R.D. 421, 424 (S.D.N.Y.), *aff'd,* 578 F.2d 1367 (2d Cir.), *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

█ None of the recognized exceptions invalidates the decree in this action. First, the defendants gave knowing and voluntary consent to the settlement. *See* Final Consent Decree, Memorandum of Agreement 7. There is no allegation of fraud, duress, or illegality in the formation of the agreement, which is a contract freely entered into between the parties. Second, the final consent states that the assistant attorney general was authorized to negotiate the agreement. "The Administrator for the Texas Employment Commission hereby grants to Carla M. Crisford, Assistant Attorney General, the authority to negotiate the details of and enter into a final consent decree according to the terms of this Agreement." *Id.* Third, there has been no intervening change in case law that would affect the validity of the agreement; and in the event of changes in statutory law that might be inconsistent with the terms of the decree, the parties have stipulated that they may renegotiate. Final Consent Decree at 5.

Yet, the TEC argues, in effect, that a change in federal policy constitutes a changed circumstance that mandates the state's repudiation of the consent decree. *See* Affidavit of J. Ferris Duhon. Although the federal government's view on some matters has shifted, *see infra* p. 1071, it is not clear that the federal government's position on the disputed statutory language has changed over the past nine months. The federal agencies have always depended on the DOL's interpretation of "permanently residing in the United States under color of law," as defined in an unemployment insurance program letter issued prior to the federal agencies' involvement in this action. *See* Federal Amici Memorandum at 9–10 (referring to Unemployment Insurance Program Letter No. 1–86, at 5–7 (October 28, 1985)); Letter from Leslie K. Dellon to Carla M. Crisford 2 (April 21, 1986) (hereinafter cited as DOL Letter) (referring to the same unemployment insurance program letter in discussing DOL's position on the consent decree). Despite the state's contention that the federal posture has changed, it conceded at the fairness hearing that the DOL maintains that its position has not changed over time.

The defendants cannot persuasively argue a change in circumstances, even assuming they are correct that the federal government has altered its position, because the state could have anticipated the DOL's insistence on strict compliance with its interpretation of permanently residing under color of law. The DOL, while assiduously avoiding all efforts to become a party, has consistently sought to influence the outcome of this lawsuit by offering its view of the aliens who should receive unemployment compensations. The state knew at the time it negotiated the settlement agreement that the federal government could initiate proceedings that would result in the loss of federal funds if the state failed to follow federal guidelines. As the plaintiffs point out, "Had the defendants wished to condition their settlement offer on DOL's approval, or to avoid any settlement that did not include such a stipulation, they had ample opportunity to do so. They did not." Plaintiffs' Response to Defendants' Motion to Stay 3. Instead, during the two-week delay of the trial, the defendants signed an agreement that provided for renegotiation only in the event of inconsistent federal or state legislation. Final Consent Decree at 5. "Regret intensified upon reflection is not ... cause for modification," *Fortin v. Commissioner of Massachusetts Department of Public Welfare,* 692 F.2d 790, 800 (1st Cir.1982), and it should not be grounds for vacating a voluntary settlement.

Even if the TEC could not anticipate either the federal government's policy changes or the consequences of failing to abide by them, the state's lack of foresight does not alter the validity of the consent decree. Just as a change in a state administration does not justify the vacating of a consent decree, *Newman v. Graddick,* 740 F.2d 1513, 1517 (11th Cir.1984), and a change in a state agency does not prevent enforcement against a new agency providing the same services, *Cornelius v. Hogan,* 663 F.2d 330, 332–33 (1st Cir.1981), a change in federal policy does not permit a state official to withdraw from a settlement agreement. *See Withers v. Harris,* S–77–3, slip op. at 5 n. 3 (E.D.Tex. February 11, 1981) ("That the present Secretary ..., had he been in office seven months ago, might not have approved the agreement reached then is irrelevant to its current status as a binding executory accord, enforcible as a final judgment upon approval by the court."). If, for example, an employer had settled an employment discrimination action with the federal government in 1980, the employer could not later repudiate the hiring goals and timetables established in the consent decree merely because the Justice Department in 1980 changed its views on affirmative action.[8] Similarly, the fact that the DOL may have changed its policy on the award of unemployment compensation benefits to aliens is not a sufficient reason to void the settlement agreement that the state voluntarily entered into. *Cf. George v. Parry,* 77 F.R.D. 421, 423 (S.D.N.Y.) (refusing to allow withdrawal from stipulation of settlement in class action based on defendants' argument that the stipulation imposed obligations on them contrary to those mandated by prevalent state law), *aff'd,* 578 F.2d 1367 (2d Cir.), *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978). Having voluntarily entered into a settlement agreement, the defendants are now bound by the contract they made, unless it is illegal.

C. *Legality of the Consent Decree*

[redacted] As alternative relief, the TEC requests a ruling on the lawfulness of the consent decree under federal law. The plaintiffs point out that the defendants have not identified which elements of the final consent decree are allegedly unlawful or submitted any evidence or legal authority in support of their position. Therefore, the plaintiffs suggest that the defendants should be ordered to submit a brief delineating their challenges to the proposed final consent decree in order to give the plaintiffs an opportunity to respond. Plaintiffs' Response to Defendants' Motion to Set Aside Final Consent Decree and to Reurge Joinder of Federal Agencies 8–10. Despite the appearance of agreement on the issue of a hearing, no hearing will be ordered. An evidentiary hearing is not required before a district court refuses to modify a consent decree. *Delaware Valley Citizen's Council for Clean Air v. Pennsylvania,* 674 F.2d 976, 981 (3d Cir.) *cert. denied,* 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).

[redacted] To reject a settlement on the grounds that it initiates clearly illegal conduct, the unlawfulness or unconstitutionality of the proposed action must appear on the face of the agreement. *Gautreaux v. Pierce,* 690 F.2d 616, 626 (7th Cir.1982). In applying this principle, a court must not decide unsettled legal questions. *Armstrong v. Board of School Directors,* 616 F.2d 305, 320 (7th Cir.1980). Instead, prior decisions must have found the challenged practice to be illegal as a general rule. *Id.* at 321.

[redacted] The proposed final consent decree in this action does not require the state to engage in illicit or unconstitutional conduct. Although Congress has passed stat-

8. *Cf. Local 28 of the Sheet Metal Workers' International Association v. EEOC,* — U.S. —, 106 S.Ct. 3019, 3034 n. 24, 92 L.Ed.2d 344 (1986) (plurality, in rejecting Solicitor General's argument against the award of preferential relief to individuals who are not identified victims of unlawful discrimination, noted that the Solicitor General challenged union membership goals for minorities, even though the EEOC had previously sought those numerical goals and implementing timetables).

utes that limit the governmental benefits that aliens may receive, it has failed to define the aliens who are permanently residing in the United States under color of law. Without specific direction from Congress, a state may adopt its own rules to comply with the federal statute.[9] The interpretation adopted by the state in the proposed final consent decree is consistent with the view that "permanently residing in the United States under color of law" includes persons who the INS knows are residing in the United States and whose departure the INS does not contemplate enforcing. *See Holley v. Lavine,* 553 F.2d 845, 851 (2d Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). Even if the agreement extends benefits beyond the minimum requirements of the federal guidelines, a state has the right to award more generous unemployment benefits than the minimum requirements of federal law. *See New York Telephone Co. v. New York State Department of Labor,* 440 U.S. 519, 537–40, 545–46, 99 S.Ct. 1328, 1339–41, 1343–44, 59 L.Ed.2d 553 (1979) (upholding New York statute that awarded benefits to striking workers).

The opinion of the Court of Appeals for the Second Circuit in *Berger v. Heckler,* 771 F.2d 1556 (2d Cir.1985), makes clear that the final consent decree proposed in this action is legal. In *Berger,* the Secretary for the Department of Health and Human Services challenged a consent decree regarding the eligibility of certain aliens for social security benefits. The parties interpreted the phrase "permanently residing in the United States under color of law" in the Social Security Act to include: "Any other alien with the knowledge and permission of the [INS] and whose departure from the United States the [INS] does not contemplate enforcing." *Id.* at 1560. The amended consent decree in *Berger* listed four general groups of aliens permanently residing in the United States under color of law, amplifying those groups with

eleven more specific categories. *Id.* at 1576 n. 33. The Secretary argued that the amended decree entitled certain aliens to benefits who were not accorded eligibility by the statutory language, its legislative history, or the original consent decree. She urged that the language in the decree should be interpreted to include only those aliens who could point to a letter that authorized their presence in the country for an indefinite period of time. *Id.* at 1575. In rejecting the Secretary's limited interpretation, the Second Circuit approved the amended consent decree and its specific categories of aliens as conforming with both the letter and the spirit of the underlying statute and original decree. *Id.* at 1577.

In this action, the state has agreed to do no more than the Secretary was ordered to do in *Berger.* An examination of the aliens entitled to unemployment benefits under the final consent decree shows that at least five categories are similar to the categories approved in *Berger. Compare* Final Consent Decree at 4(3), (4), (5), (6), and (7), *with Berger,* 771 F.2d at 1576 (b), (d), (e), (g), (j), and (k). Three additional categories—conditional entrants, parolees, and persons with an individualized assurance from INS of a indefinite stay in the United States—resemble the definition of aliens approved for benefits by the DOL. *Compare* Final Consent Decree at 4(1), (2), and (9) *with* Unemployment Insurance Program Letter 1–86, at 5–7. The decree does include at least one category of aliens, applicants for asylum, that have been denied government benefits on the ground that they are temporary, rather than permanent, residents. *See Sudomir v. McMahon,* 767 F.2d 1456, 1459 (9th Cir.1985). The Ninth Circuit's decision in *Berger,* however, shows that "an integrated consent decree cannot be rescinded when a federal agency later learns that it has made a more generous settlement than it might have been re-

**9.** *See Cabais v. Egger,* 690 F.2d 234, 240 (D.C.Cir. 1982); *see also* Federal Amici Memorandum at 10 n. 6 (disagreeing with the state's argument that it is legally bound by the DOL's interpreta-

tion of "permanently residing in the United States under color of law," because the phrase is a minimum requirement imposed by Congress and not by the DOL).

quired by law to make." Federal Amici Memorandum at 15 n. 9.

The decree specifically rejects the claim that any alien is a permanent resident under color of law, if the INS is aware of his presence and has not taken steps to deport him, Final Consent Decree at 5, as other court decisions have done. *See e.g., Esparza v. Valdez,* 612 F.Supp. 241, 244 (D.Colo. 1985) (interpreting phrase permanently residing in the United States under color of law to mean aliens who, after a review of their particular factual circumstances, have been granted an immigration status which allows them to remain in the country indefinitely). Moreover, the determination of a claimant's eligibility is left to the state following its established procedures for handling claims as required in *Esparza. See id.*

Nevertheless, the TEC now urges that the decree should be set aside to enable the DOL to defend its view that an alien applicant cannot be available for work unless he or she has INS work authorization. After the state announced on the day of trial that it would no longer require INS work authorization because the federal government in its amici memorandum had defined work authorization as an appropriate additional state requirement,[10] the DOL retreated from its earlier view that "availability for work is ... an additional, more rigorous state eligibility requirement." Federal Amici Memorandum at 7. By April, the DOL was insisting that the state could not waive its requirement that unemployment compensation claimants must produce INS work authorization to be available for work. DOL Letter at 11. "The withdrawal of funds, based upon the Consent Decree, to compensate aliens who are perma-

nent residents under color of law but who do not have INS work authorization during each week for which a claim is filed thus could result in a finding of nonconformity and noncompliance by the Secretary." *Id.* at 12.

The problem with the DOL's latest position is that it again equates INS work authorization with an alien's legal availability for work. Yet, the federal statute that the DOL is interpreting does not mention the availability for employment requirement, *see* Federal Amici Memorandum at 6, and the Texas statute does not have the word "legal" modifying "availability for work." *See* Tex.Rev.Civ.Stat.Ann. art. 5221b–2(d). Unlike the undocumented workers in *Sure-Tan v. N.L.R.B.,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), who were indefinitely unavailable for work because they had accepted voluntary departure to Mexico, the aliens covered by the consent decree are lawfully entitled to be present and employed in the United States. They are legally present because they are permanently residing in the United States under color of law, and they are legally entitled to employment because the United States and the State of Texas do not prohibit the employment of aliens. *See* Records of Proceedings, Oral Hearing on Plaintiffs' Motion for Preliminary Injunction 31–32; Plaintiffs' Pre-Trial Brief 33–34. The federal government's latest interpretation of the state's requirement is not supported by the language of the statute, the agency's reliance on axioms,[11] or the caselaw. *See Local 512, Warehouse and Officer Workers' Union v. N.L.R.B.,* 795 F.2d 705 (9th Cir.1986) (awarding back pay to undocumented alien employees, who re-

---

**10.** The clearest discussion in the memorandum on the relationship between work authorization and the disputed statutory language follows:

Permanent residence under color of law is thus a separate concept from work authorization. While the former is a minimum requirement that aliens must satisfy to receive unemployment compensation in states that participate in the FUTA Program, states can and do impose the additional requirement that aliens who are permanently residing un-

der color of law have authorization from the INS to work in the United States at the time they performed the services on which they base their unemployment compensation claim and at the time they apply for benefits. Federal Amici Memorandum at 19–20.

**11.** According to the DOL, "[i]t is axiomatic that individuals cannot be compensated for being unemployed if they are not legally available for work." Federal Amici Memorandum at 12.

main in the United States and who have not been subject to deportation proceedings, as a remedy for the employer's violation of the National Labor Relations Act). Therefore, the change in federal policy on the availability of work cannot be the basis for invalidating the consent decree, and the decree need not be set aside to allow the DOL to litigate its latest position. "[H]aving decided to compromise and having obtained court approval, they [state] may not back and fill." *White Farm Equipment Co. v. Kupcho,* 792 F.2d 526, 530 (5th Cir. 1986).

### D. *The Federal Agencies as Parties*

The TEC again urges the joinder of the DOL and INS as third party defendants, which the plaintiffs oppose. Other than a declaration in which a former assistant attorney general denies that he intended to deceive the court when he stated that the INS was seeking joinder as a voluntary defendant, the state presents no fact in support of joinder that has not already been considered. *See* Order of January 6, 1986. Accepting the attorney's declaration as true, it alone is insufficient reason to allow the TEC to set aside the consent decree to allow the state to sue the INS or the Department of Labor as a third-party defendant.[12] The only additional argument that the state makes is that joinder would enable the state to avoid the initiation of federal compliance proceedings. Yet, it makes no sense to bring the federal agency into this action, which would force the parties to litigate the merits of the plaintiffs' claims, in order to enable the state to avoid defending its settlement in another adversary proceeding. The decision denying the state the opportunity to file a third party complaint against the DOL will stand.

### III.

 Rule 23(e) states that a "class action shall not be dismissed or compromised without the approval of the court."

Fed.R.Civ.P. 23(e). Under that rule, a court must determine that the eagerness of the parties or their attorneys to conclude the case without a trial does not disadvantage any of the class members. Manual for Complex Litigation, Second, § 30.41 (1985). A settlement agreement in a class action should be approved if it is fair, adequate, and reasonable and is not the product of collusion between the parties. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977). These standards should be enforced rigorously to ensure that the proposed settlement is in the best interest of all class members, but resolution of the merits of the plaintiffs' claims is not required. *Young v. Katz,* 447 F.2d 431, 444 (5th Cir.1971). In evaluating settlement proposals, the following factors should be considered:

(1) whether the settlement was a product of fraud or collusion;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the factual and legal obstacles [to] prevailing on the merits;

(5) the possible range of recovery and the certainty of damages; and

(6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson,* 667 F.2d 1204, 1208 (5th Cir.), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982).

In this action, there is no evidence of fraud or collusion. On the contrary, the issues in this case have been vigorously contested, from discovery disputes to the request for a preliminary injunction to the joinder of federal agencies as parties. Although the non-jury trial was scheduled to last only three days, the trial probably

---

**12.** As the order denying the state's motion to file a third-party complaint indicated, it is not clear that the TEC has any claim against the INS. "At a hearing on its motion to amend, the state essentially conceded its failure to state a claim against the INS when it admitted that there is no direct financial relationship between the INS and the Texas Employment Commission." Order of January 6, 1986, at 12 n. 4.

would not have ended the parties' time or expense in litigating the case. A post-trial brief would have been requested, and an appeal of any decision was expected. The parties did not reach a settlement until after they had given opening statements at trial, nearly three years after Ibarra filed his complaint, thus enabling them to make an informed decision about the terms of the settlement.

Furthermore, the settlement is advantageous because a decision in favor of the plaintiffs was not a certainty. The briefs of the federal government and the Federation for American Immigration Reform indicate that there is some authority that disagrees with the plaintiffs' definition of permanently residing in the United States under color of law. Moreover, even accepting the plaintiffs' view that the unemployment statute does not require written work authorization from the INS, the court's concurrence with the plaintiffs' allegations on work authorization would not necessarily extend to the question of the aliens entitled to relief. For example, any court-drafted definition most likely would not have included applicants for asylum listed in the proposed final decree. *See Sudomir v. McMahon*, 767 F.2d 1456, 1459 (9th Cir. 1985) (denying government benefits to applicants for asylum because they were not permanent residents of the United States).

The settlement is also favorable to the plaintiffs because it grants essentially all of the relief sought, as shown by a comparison between provisions in the partial and final consent decrees and the relief sought in the fifth amended complaint. The partial consent decree, for example, established procedures to end oral denials of benefits, unreasonable delays in the adjudication of claims, English-only forms, and hearings with inadequate English-Spanish interpreters. Similarly, the final consent decree sets standards for determining the eligibility for benefits of persons "permanently residing in the United States under color of law" that are similar to what the plaintiffs had been advocating. It also provided for a procedure by which the named plaintiffs could have their applications for benefits processed under the proper interpretation of that statutory language. The only relief that the plaintiffs appear to have given up is Ibarra's claim for compensatory damages, which, if awarded, would not have been shared with any absent class members.

██ In obtaining the agreement, the plaintiffs do not appear to have compromised any rights of absent class members. Although no class member is guaranteed benefits, it is not a valid objection that a compromise fails to establish a specific fund or to insure that each class member will receive some pay. *Cotton v. Hinton*, 559 F.2d 1326, 1334 (5th Cir.1977). Except for the back-dating of plaintiff Mario Esparza's claim for employment compensation, which was granted in the partial consent decree, the named plaintiffs are treated like other alien applicants for unemployment compensation. Every alien who has been denied benefits since March 27, 1983, due to the lack of INS work authorization, must go through the same process of redetermination of benefits. The fact that no class member has objected to the proposed settlement, despite widespread notice of the agreement, is an indication of the lack of favoritism in the decree towards the named plaintiffs.

Although no class member filed an objection, at least nine other individuals did, including self-described American citizens, World War II veterans, taxpayers, and employers. A typical comment was filed by E.O. Rushing of Nacogdoches, Texas:

> Under what law do aliens have the right of U.S. Citizens?
>
> What law says we must support them with our tax dollars while they are in this country?
>
> If they are unhappy, let them go home—we certainly don't need them. No country in the world supports aliens, why should we?—
>
> Mexico doesn't even feed their own prisoners—why should we support *any* alien when we have U.S. citizens going hungary [sic].

The four persons who voiced objections at the settlement hearing were less vitriolic. They argued that the aliens listed in the decree were not lawful permanent residents and that the granting of unemployment compensation to them would encourage illegal immigration. Other than one attorney appearing on behalf of FAIR, an *amicus curiae* which had made its views known to the parties before entry of the consent decree, no person appearing at the hearing was a participant in the litigation. Therefore, their opinions are not a factor to be considered in evaluating the fairness of the settlement proposal. *See Parker v. Anderson,* 667 F.2d 1204, 1208 (5th Cir.), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); *see also Newman v. Graddick,* 740 F.2d 1513 (11th Cir.1984) (upholding the approval of consent decree in prison litigation over the objection of the state attorney general who had no interest prejudicially affected by the decree).

▮ After presiding over the hearing on the proposed settlement, the magistrate concluded that the settlement should be approved, at least from the viewpoint of the class members. A review of relevant criteria provides further support for his conclusion that the proposed final consent decree is fair. The settlement contract was fairly reached after hard bargaining; the litigation had advanced sufficiently to enable the parties to make an informed agreement; the plaintiffs would face some obstacles to prevailing on the merits and obtaining as broad a remedy; the plaintiff class received most, if not all, of the relief sought; there is no distinction between the relief given the named plaintiffs and the absent class members; and no member of the plaintiff class has objected to the proposed decree. Accordingly, it is

ORDERED that the motion of the defendants to set aside the consent decree and rejoin the federal agencies as defendants shall be, and it is hereby, DENIED. It is further

ORDERED that the Report and Recommendation of the United States Magistrate shall be, and it is hereby, APPROVED and ADOPTED. It is further

ORDERED that the final consent decree presented to the court and preliminarily approved on April 17, 1986, shall be, and it is hereby, finally APPROVED. It is further

ORDERED that the parties submit by September 25, 1986, the notice of the right to request redetermination for approval of the court.

## APPENDIX TO FINAL JUDGMENT

### FINAL CONSENT DECREE

#### INTRODUCTION

On March 28, 1983, plaintiff Fidel B. Ibarra, Jr. instituted in the United States District Court for the Eastern District of Texas Civil Action No. L–83–44–CA, against the Texas Employment Commission ("TEC") and the other defendants, seeking declaratory and injunctive relief to redress alleged deprivation of rights secured by 42 U.S.C. § 503(a) and 42 U.S.C. § 1983. By order of this Court dated December 14, 1983, co-plaintiff Mario Esparza was joined as a party to the suit.

The plaintiffs originally complained that the Texas Employment Commission orally denied claims for benefits, that the TEC's appeals procedure was arbitrary and unreasonable, that the delays involved in the appeals procedure were excessive and that the TEC discriminated against Spanish-speaking claimants by failing to provide notices and forms in Spanish and by failing to provide qualified interpreters. Finally, the plaintiffs complained that the TEC improperly denied benefits to alien claimants who were "permanently residing in the United States under color of law" as that term appears in Tex.Rev.Civ.Stat.Ann. art. 5221b–1(h) and 26 U.S.C. § 3304(a)(14)(A).

The parties negotiated an agreement disposing of all of the plaintiffs' claims except the claim regarding payment of benefits to aliens, and this Court signed and entered the Partial Consent Decree setting forth that agreement on November 10, 1985.

On October 4, 1984, the Court certified the plaintiffs as the representatives of a class consisting of "all past, present, and future individuals who have been denied unemployment benefits in Texas because of their inability to produce Immigration and Naturalization Service work authorization," and certified this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Since the Court's October 4, 1984 Order, counsel for plaintiffs and counsel for TEC have engaged in extensive discussions concerning payment of unemployment insurance benefits to aliens. These discussions have resulted in an agreement settling this action among the parties in the manner and upon the terms set forth below. This settlement does not constitute an admission of liability by the TEC. Rather, it constitutes a good faith attempt by TEC and the plaintiffs as class representatives to ensure that the TEC pay benefits to qualified alien claimants who are permanently residing in the United States under color of law.

## JURISDICTION

This Court has jurisdiction of the subject matter of this action and the parties hereto. The complaint states claims which, if proven, would authorize the Court to grant relief pursuant to 42 U.S.C. § 1983.

## EFFECT OF DECREE

This Decree resolves in full all claims against the TEC by the class represented by plaintiffs involving payment of unemployment benefits to aliens, including all claims for benefits, injunctive, declaratory or other relief up to and including the date on which notice of this Decree is approved by the Court.

Upon the consent of the parties to this action, it is ORDERED, ADJUDGED and DECREED that:

The Texas Employment Commission shall adopt the following policy with regard to payment of unemployment insurance benefits to aliens:

## I.

## ALIEN ELIGIBILITY

The term "permanently residing in the United States under color of law" shall be defined to include those aliens of whose presence in the United States the Immigration and Naturalization Service (INS) is aware *and* with regard to whom there has been an affirmative case-specific or class-specific determination that allows the alien to remain in the United States for an indefinite period of time. The term "permanent" shall be construed as defined by 8 U.S.C. § 1101(a)(31), and the term "residing" shall be construed by referring to the definition of "residence" in 8 U.S.C. § 1101(a)(33). Specifically embraced by this language are the following categories of aliens:

A) Aliens who have received an affirmative case-specific determination from the INS that allows them to remain in the U.S. for an indefinite period of time, including:

1) Aliens admitted as conditional entrants under § 203(a)(7) of the Immigration and Nationality Act;

2) Aliens paroled into the United States under § 212(d)(5) of the Immigration and Nationality Act;

3) Aliens granted deferred departure or extended voluntary departure;

4) Applicants for adjustment of status under § 245 of the Immigration and Nationality Act;

5) Applicants for or persons granted asylum or withholding of deportation under § 208 or § 243(h) of the Immigration and Nationality Act;

6) Applicants for or persons granted suspension of deportation under § 244(a) of the Immigration and Nationality Act;

7) Persons admitted to the United States as refugees under § 207 of the Immigration and Nationality Act;

8) Citizens of Cuba or Haiti afforded the status of "Cuban/Haitian Entrant—Status Pending"; and

9) Persons possessing an individualized assurance by the Immigration and

Naturalization Service that they may remain indefinitely in the United States.

B) Aliens who are covered by a class-specific determination by INS that allows them to remain in the United States for an indefinite period of time, including:

1) Persons who are the beneficiaries of visa petitions as the children, spouses, or parents of citizens of the United States twenty-one (21) years of age or older; and

2) Persons who are the beneficiaries of visa petitions under §§ 203(a)(1) through (6) of the Immigration and Nationality Act, and who are entitled to priority dates not more than sixty (60) days later than the date shown in the latest Visa Bulletin published by the United States Department of State.

An alien claiming to be permanently residing in the United States under color of law cannot rest his claim solely upon the fact that the INS is aware of his whereabouts, and has not as yet taken steps to deport him.

This construction of alien eligibility shall apply to both wage credit and availability determinations under the Texas Unemployment Compensation Act.

In the event of federal or state legislation inconsistent with the terms of this consent decree, the parties hereto agree to renegotiate the terms of their settlement and submit a proposed revision of this consent decree to the Court.

## II.
## NOTICE TO CLASSMEMBERS

Counsel for the parties agree to negotiate, in good faith and without undue delay, the content and manner of distribution of the following two notices to the class, and to submit such notices to the Court for approval. The notices shall be prepared in both English and Spanish.

A) *Notice of the Proposed Settlement:* This notice will inform the class members of the proposed settlement, the terms thereof, that they object thereto or comment thereon, and that the Court will hold a hearing to consider such objections and comments and consider approving the proposed settlement. It will also direct class members to plaintiffs' counsel for further information or copies of the proposed settlement. The defendants shall post this notice in all local TEC offices for a 30–day period, and cause it to be published at the beginning of that 30–day period, in English, at least once in the English-language newspaper of greatest circulation in each of the cities listed in paragraph C) below. The plaintiffs will cause this notice to be published at the beginning of that 30–day period, in Spanish, at least once in the Spanish-language newspaper of most frequent publication in each of the cities listed in paragraph C) below that have Spanish-language newspapers. The parties also agree that they will distribute such notice in any additional manner ordered by the Court.

B) *Notice of the Right to Request Redetermination:* Within fourteen (14) days of the Court's order approving the proposed settlement, or of the Court's approval of this notice, whichever comes later, the Texas Employment Commission will send this notice in English and Spanish by first-class mail to the last known address of all claimants whose claims were filed on or after March 28, 1983, and denied under § 3(h) of the Texas Unemployment Compensation Act, informing such persons that they may request redetermination of their claims and how to do so. This notice shall also be sent to all persons who were held ineligible under § 4(d) of the Texas Unemployment Compensation Act for reasons based on alienage on or after October 1, 1985. The mailing of this notice will commence a six-month period during which classmembers may request redetermination of their claims.

C) On the second Wednesday of each of the first three months following the mailing of the notice described in paragraph B) above, the Texas Employment Commission will cause the English-language version of that notice to be published in the first section of the newspaper of greatest circulation in the following cities: Amarillo, Austin, Beaumont, Brownsville, Corpus Christi, Dallas, El Paso, Fort Worth, Harlingen. Houston, Laredo, Longview, Lubbock, McAllen, Odessa, San Antonio, and Tyler.

D) Simultaneous with the Texas Employment Commission's publication of the notice identified in paragraph B) above in the English-language newspapers, the plaintiffs will cause the Spanish version of such notice to be published in the Spanish-language newspaper of most frequent publication in each of the cities in paragraph C) above that have Spanish-language newspapers.

E) The Texas Employment Commission will post the notice identified in paragraph B) above in each of its local offices for six months, beginning with the date that notice is mailed to class members as described in paragraph B) above.

F) At the beginning of the six-month period during which class members may request redetermination of their claims, the plaintiffs will prepare and distribute to at least one Spanish-language radio station in each of the cities listed in paragraph C) above that have Spanish-language radio stations, and to the Texas State Network's Spanish Information Service, a Public Service Announcement, in Spanish, informing potential class members that they should go to their local TEC office to request information about the settlement and claim forms.

### III.

### IMPLEMENTATION

The Texas Employment Commission shall redetermine the claims of the individuals requesting redetermination pursuant to the notices identified above, using the interpretation of § 3(h) and § 4(d) of the Texas Unemployment Compensation Act set out above in this Decree. The claims of the named plaintiffs will be similarly redetermined. The Texas Employment Commission will take backdated continued claims when appropriate.

Claimants reporting to TEC offices in response to the notices identified above shall be given written information explaining in summary fashion the provisions of this Decree and their rights hereunder.

In order to instruct its staff regarding the policies set out in this decree, the TEC shall, prior to the date on which notice of the right to request redetermination is mailed to class members, revise the provisions of the Unemployment Insurance Manual relating to alien eligibility, and provide appropriate training to its personnel.

The TEC will centralize the decision-making on requests for redetermination in its main office in Austin. When the TEC decides to deny such a request, it will forward a copy of the decision denying the request and the supporting documentation to counsel for the plaintiffs five days before mailing the decision denying the request to the claimant. Counsel for the plaintiffs will review each such decision received, and if he believes the TEC's decision to be erroneous, will communicate by letter to the claimant informing him/her that he believes the decision is wrong and that an appeal would be appropriate, instructing him/her what evidence he/she should gather to support the appeal and how to procure such evidence, and directing him/her to the nearest legal services office to request assistance in prosecuting the appeal. The appeals procedure for denied requests for redetermination will be that provided for in § 6(b)–(i) of the Texas Unemployment Compensation Act.

During the six-month period during which class members may request redetermination, the TEC will file monthly reports with the Court setting forth the number of

requests received, the number approved, and the number denied. Following the close of that six-month period, the TEC will submit a final report to the Court containing the cumulative data on claims received, approved, and denied, and informing the Court of the implementation of the other elements of the consent decree.

## IV.

### AGREEMENT TO NEGOTIATE

Counsel for the plaintiffs agrees, on behalf of himself and East Texas Legal Services, Inc., to negotiate any disputes arising out of the settlement of this litigation for a period of sixty (60) days before seeking action by the Court. In the event of exigent circumstances requiring immediate action to prevent irreparable harm, the sixty-day negotiation requirement shall not apply.

## V.

### ATTORNEYS' FEES

The issue of attorneys' fees is severed. The plaintiffs will not oppose the Texas Employment Commission's attempt to interplead the U.S. Department of Labor to seek attorneys' fees from that agency.

## VI.

### AUTHORITY

Appended hereto as Attachment A is the Memorandum of Agreement by which the Administrator of the TEC granted counsel for the defendants the authority to negotiate the details of and enter into this Decree.

CONSENTED AND AGREED TO by counsel representing the following parties:

/s/ Richard S. Fischer
Richard S. Fischer
East Texas Legal Services, Inc.

Kristine Poplawski
Farmworkers Justice Fund, Inc.

Attorneys for Plaintiffs

/s/ Carla M. Crisford
Carla M. Crisford
Assistant Attorney General

Attorney for Defendants

ENTERED this 25th day of August, 1986.
 /s/ William Wayne Justice
 Chief Judge

### ATTACHMENT A

### MEMORANDUM OF AGREEMENT

For the purposes of resolving the case of *Fidel B. Ibarra, Jr. and Mario Espara, Et Al. v. TEC, Et Al.*; Civil Action Number L–83–44–CA, United States District Court for the Eastern District of Texas, Lufkin Division, the undersigned Administrator of the Texas Employment Commission adopts the following policy with regard to payment of unemployment insurance benefits to aliens:

## I.

### ALIEN ELIGIBILITY

The term "permanently residing in the United States under color of law" shall be defined to include those aliens of whose presence in the United States the Immigration and Naturalization Service (INS) is aware *and* with regard to whom there has been an affirmative case-specific or class-specific determination that allows the alien to remain in the United States for an indefinite period of time. The term "permanent" shall be construed as defined by 8 U.S.C. § 1101(a)(31), and the term "residing" shall be construed by referring to the definition of "residence" in 8 U.S.C. § 1101(a)(33). Specifically embraced by this language are the following categories of aliens:

A) Aliens who have received an affirmative case-specific determination from the INS that allows them to remain in the U.S. for an indefinite period of time, including:

 1) Aliens admitted as conditional entrants under § 203(a)(7) of the Immigration and Nationality Act;

2) Aliens paroled into the U.S. under § 212(d)(5) of the Immigration and Nationality Act;

3) Aliens granted deferred departure or extended voluntary departure;

4) Applicants for adjustment of status;

5) Applicants for or persons granted asylum or withholding of deportation under § 208 or § 243(h) of the Immigration and Nationality Act;

6) Applicants for or persons granted suspension of deportation under § 244(a) of the Immigration and Nationality Act;

7) Persons admitted to the United States as refugees;

8) Citizens of Cuba or Haiti afforded the status of "Cuban/Haitian Entrant—Status Pending";

9) Persons possessing an individualized assurance by the Immigration and Naturalization Service that they may remain indefinitely in the United States.

B) Aliens who are covered by a class-specific determination by INS that allows them to remain in the United States for an indefinite period of time, including:

1) Persons who are the beneficiaries of visa petitions as the children, spouses, or parents of citizens of the United States twenty-one (21) years of age or older;

2) Persons who are the beneficiaries of visa petitions under § 203(a)(1) through (6) of the Immigration and Nationality Act, and who are entitled to priority dates not more than sixty (60) days later than the date shown in the latest *Visa Bulletin* published by the United States Department of State.

An alien claiming to be permanently residing in the United States under color of law cannot rest his claim solely upon the fact that the INS is aware of his whereabouts and has not as yet taken steps to deport him.

This construction of alien eligibility shall apply to both wage credit and availability determinations under the Texas Unemployment Compensation Act.

In the event of federal or state legislation inconsistent with the terms of the consent decree entered into in the *Ibarra* case, the parties to that litigation agree to renegotiate the terms of their settlement and submit a proposed revision of the consent decree to the court.

II.

REDETERMINATION OF CLAIMS

A) The Texas Employment Commission will send notices in English and Spanish by first-class mail to the last known address of all claimants whose claims were filed on or after March 28, 1983, and denied under § 3(h) of the Texas Unemployment Compensation Act, informing such persons that they may request redetermination of their claims.

B) The notice identified in paragraph A) above shall also be sent to all persons who were held ineligible under § 4(d) of the Texas Unemployment Compensation Act for reasons based on alienage on or after October 1, 1985.

C) The Texas Employment Commission will cause to be published, every other week for a period of six weeks, the notice identified in paragraph A) above, in the newspaper of greatest circulation in the following cities: Houston, Dallas, Fort Worth, San Antonio, El Paso, Austin, Beaumont, Lubbock, Amarillo, Tyler, Longview, Odessa, Harlingen, McAllen, Laredo, and Brownsville.

D) The Texas Employment Commission will post in all its local offices the notice identified in paragraph A) above for a period of six months.

E) The Texas Employment Commission will redetermine the claims of the individuals requesting redetermination pursuant to the notices identified above, using the interpretation of § 3(h) and § 4(d) of the Texas Unemployment Compensation Act set out

above in this Agreement. The claims of the named plaintiffs will be similarly redetermined. The Texas Employment Commission will take backdated continued claims when appropriate.

F) Claimants will have six months from the initiation of the notice procedure set forth in paragraphs A) through D) above to request the action specified in paragraph E) above.

### III.

### AGREEMENT TO NEGOTIATE

Counsel for the plaintiffs agrees, on behalf of himself and East Texas Legal Services, Inc., to negotiate any disputes arising out of the settlement of this litigation for a period of sixty (60) days before seeking action by the Court. In the event of exigent circumstances requiring immediate action to prevent irreparable harm, the sixty (60) day negotiation requirement shall not apply.

### IV.

### ATTORNEYS' FEES

Counsel for the plaintiffs and defendants will request the Court to sever the issue of attorneys' fees. The plaintiffs will not oppose the Texas Employment Commission's attempt to interplead the U.S. Department of Labor for the purpose of seeking attorneys' fees from that agency.

### V.

### AUTHORITY TO NEGOTIATE CONSENT DECREE

The Administrator for the Texas Employment Commission hereby grants to Carla M. Crisford, Assistant Attorney General, the authority to negotiate the details of and enter into a final consent decree according to the terms of this Agreement.

Feb. 22, 1986
Date

/s/ William D. Grossenbacher
William D. Grossenbacher,
Administrator, Texas Employment Commission
/s/ Carla M. Crisford
Carla M. Crisford
Attorney for Defendants
/s/ Richard S. Fischer
Richard S. Fischer
Attorney for Plaintiffs