**WHITE FARM EQUIPMENT CO.,**
**Plaintiff-Appellee,**

v.

**Joseph G. KUPCHO, d/b/a Haufler Equipment; Wanda Kupcho and Kup Equipment Co., Defendants-Appellants.**

No. 85–2509.

United States Court of Appeals,
Fifth Circuit.

June 23, 1986.

William J. Salyer, San Antonio, Tex., for defendants-appellants.

Robert B. McNeal, Mark B. Meyers, Eugene R. Preaus, New Orleans, La., for White Farm Equipment.

Before RUBIN, POLITZ, and JOHNSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This appeal unsuccessfully seeks to set aside a judgment enforcing a settlement agreement reached after the case was called for trial and thereafter read into the record and approved by the court. Litigants may not disavow compacts thus made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration.

White Farm Equipment sued Joseph G. Kupcho, Wanda M. Kupcho, and KUP Equipment Company, Inc. for amounts due for supplies and parts sold to them for their business as a White Farm dealer. The case came on for trial, and, after opening argument, the judge suggested that the parties adjourn to another room and make a final attempt at settlement. With their principals present, the parties spent over two hours together negotiating a settlement agreement.

The Kupchos agreed to pay White Farm $87,500. White Farm agreed to give them credit against that amount for the value of any usable repair parts they returned. In order to determine the amount of credit to be granted, it was necessary for the Kupchos to take an inventory of the repair parts in their possession and to forward the data to White Farm for a determination of the repair parts' value. It was agreed that values would be set according to White Farm's current dealer code book. After the parties had reached this agreement, they returned to court and read their agreement into the record. The judge approved the substance of the agreement and instructed the parties to work out any unresolved details and to draft documents reflecting their agreement for submission to the court within one week.

Before the Kupchos had prepared their inventory, White Farm forwarded a written settlement agreement to their counsel. Counsel for both White Farm and the Kupchos discussed revisions to the settlement agreement, leaving blanks to be filled in upon the completion of the inventory and valuation of the repair parts. Thereafter, White Farm received the Kupchos' inventory and processed the data through its computer to obtain the credit figure, an amount that proved to be substantially greater than had originally been estimated by the parties.

White Farm's counsel attempted to communicate with the Kupchos' counsel to inform him of the credit figure and to execute the settlement agreement. His phone calls were not returned. White Farm's counsel then sent to the Kupchos' counsel the settlement agreement with the valuation of the repair parts inserted, but, again, received no response. After the court required a status report, the Kupchos' counsel told the court and, for the first time, White Farm's counsel, that he had retired from the practice of law and wished to withdraw from the case before the execution of the settlement agreement.

After the district court rebuked the Kupchos' lawyer for attempting to retire before the case was completed, the lawyer informed the court that his client was having financial difficulties. The court observed that the Kupchos' tactics were "an advantageous way to get the case off the docket setting," by agreeing to a settlement then repudiating the agreement, but gave the parties more time to attempt to consummate the settlement.

After no progress had been made, White Farm filed a motion to enforce the agreement. The court held a hearing with both the Kupchos' original and their new lawyer present. The court found that the Kupchos and their counsel knew that a settlement agreement had been reached and dictated into the record, that the written draft of the agreement substantially complied with the stipulation of settlement entered into by the parties, and that the credits were valued in accordance with the parties' understanding. The court thereafter signed a final judgment incorporating and enforcing the settlement agreement.

Joseph G. Kupcho filed bankruptcy proceedings while the case was on appeal, however, the bankruptcy court modified the automatic stay in order to allow this action to proceed, and the other parties are unaffected.

While the defendants attempt to develop ambiguities and uncertainties in the agreement, the district court found it clear and enforceable. The record amply supports this conclusion, and we are bound to respect the district court's findings absent clear error.[1]

■ The defendants do not dispute the authority of their original trial counsel under Texas law to make the agreement. They assert, instead, four arguments: (1) the oral agreement read into the record was not valid or binding because a material element—the value of the repair parts credit—was undetermined; (2) they withdrew from the settlement agreement before the judgment was entered; (3) the final judgment of the court did not comport with the settlement agreement; and (4) the settlement agreement should be governed by Texas Business and Commerce Code § 35.-62, which would place a greater value on

the repair parts. The last two arguments were not raised below, but are resourcefully suggested to us for the first time on appeal. We, therefore, do not consider their merits.

In support of their first argument, the defendants refer us to Texas Rule of Civil Procedure 11, which describes the procedures by which settlement agreements are made enforceable in the Texas courts. They assert that Rule 11 is part of the substantive law of Texas in determining whether an enforceable settlement agreement has been reached.[2] We need not decide whether it is substantive or procedural, however, because the parties concede that the settlement agreement was made in open court and read into the record and is therefore enforceable under the Rule.

■ A settlement agreement is a contract, but, when incorporated into a judgment, becomes a court decree. Whether it is a valid contract between the parties is determined by reference to state substantive law governing contracts generally. For example, challenges to a settlement agreement based on interpretation of an ambiguous term, capacity to contract, fraud, or indefiniteness of a term all turn on the applicable state law.[3] Whether a settlement agreement, thus tested under state law, has been accepted by a federal court and properly incorporated into a valid and enforceable judgment is purely a matter of federal procedure. Federal courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case, to determine compliance with procedural prerequisites, and to determine when, if ever, a party may repudiate a contractually binding settlement agreement.[4]

1. Fed.R.Civ.Proc. 52(a).

2. *See Condit Chemical v. Helena Chemical Corp.,* 789 F.2d 1101, 1102 (5th Cir.1986).

3. *See, e.g., Wong v. Bailey,* 752 F.2d 619, 621 (11th Cir.1985); *Florida Educ. Ass'n, Inc. v. Atkinson,* 481 F.2d 662, 663 (5th Cir.1973).

4. *Howard v. Chris-Craft Corp.,* 562 F.Supp. 932 (E.D.Tex.1982). *See also Hennessy v. Bacon,* 137

U.S. 78, 11 S.Ct. 17, 34 L.Ed. 605 (1890); *Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984); *Dankese v. Defense Logistics Agency,* 693 F.2d 13 (1st Cir.1982); *Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); *Kelly v. Greer,* 365 F.2d 669 (3d Cir.1966); *All States Investors, Inc., v. Bankers Bond Co.,* 343 F.2d 618 (6th Cir.1965); *Cummins Diesel Michi-*

The first contention that the settlement agreement fails for indefiniteness of a material term, is therefore governed by Texas contract law.

■ At the time the settlement agreement was reached, the amount of credit for spare parts was the only unknown. White Farm was obligated to credit the Kupchos for all parts in their inventory at the value then listed in their current dealer code book. As it turned out, the figure ultimately obtained was substantially in excess of that anticipated by the Kupchos. The court found that the blanks in the settlement draft "could be made certain by the terms of the agreement itself," and that there was no error in White Farm's calculations based on the agreed method. The court properly observed that the filling in of the blanks on the settlement agreement involved no more than a "ministerial act of computing." An agreement that specifies a reasonably certain method for calculating a missing term is a valid contract under Texas law.[5] The agreement here easily meets this test.

■ The defendants' second argument is that the agreement ceased to be binding because they withdrew their consent before judgment was entered. Whether such withdrawal is or is not permissible under Texas law, a matter the parties dispute and assiduously brief, is irrelevant. Unless the defendants can demonstrate that the judgment differs materially from their agreement, or that their agreement was invalid under state law at the time it was made, a federal court may hold them to their word by incorporating the terms of their agreement into a final judgment. Questions whether the agreement was properly made a part of the record and whether it was accepted by the court in settlement of the case are procedural matters to be determined by federal law. Once incorporated into a judgment, federal courts have inher-

ent authority to enforce the judgment and to determine whether there is good reason to vacate or modify that judgment.

■ Here, the defendants have shown no sound reason that the settlement should not be incorporated into a judgment, and the judgment enforced. The court found that it had accepted the settlement agreement in resolution of the case, that the parties had agreed to all material elements, and that its judgment accurately reflected the substance of their agreement. The parties do not contend otherwise. We therefore uphold the judgment. As we observed in *Cia Anon Venezolana de Navegacion v. Harris*,[6] "Federal Courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced."

A contrary result would require parties who had once prepared for trial and subpoenaed witnesses to repeat their work. If jurors had been summoned and could not be utilized in other cases, they would have been needlessly inconvenienced, and the government put to unnecessary expense. Other cases awaiting trial that might have been scheduled would perhaps not be reached. While suits are filed and defended so that they may be decided in accordance with law, compromise of purely private litigation is universally encouraged. When the trial date has arrived, the parties are assured of their day in court. They may then, faced with an imminent decision by a judge or jury, compose their differences. But, having decided to compromise and having obtained court approval, they may not back and fill.

For these reasons, the judgment is AFFIRMED.

---

gan, Inc. v. The Falcon, 305 F.2d 721 (7th Cir. 1962).

5. *See Estate of Griffin v. Sumner,* 604 S.W.2d 221 (Tex.Civ.App.1980); *Mooney v. Ingram,* 547 S.W.2d 314 (Tex.Civ.App.1977); *Beall v. Hard-*

*wicke-Etter Co.,* 460 S.W.2d 516 (Tex.Civ.App. 1970).

6. 374 F.2d 33, 35 (5th Cir.1967).