**GRYNBERG PRODUCTION CORP., et al., Plaintiffs,**

v.

**BRITISH GAS, P.L.C., et al., Defendants.**

**Nos. 94–CV–485, 94–CV–486.**

United States District Court,
E.D. Texas,
Beaumont Division.

Nov. 15, 1994.

Stephen D. Susman, H. Lee Godfrey, F. Eric Fryar, Neal S. Manne, Susman Godfrey L.L.P., Houston, TX, Thomas Walter Umphrey, Provost & Umphrey, Beaumont, TX, for plaintiff Grynberg Production Corp.

Stephen D. Susman, H. Lee Godfrey, F. Eric Fryar, Neal S. Manne, Susman Godfrey L.L.P., Houston, TX, for plaintiff Pricaspian Development Corp.

Frank G. Jones, Layne Edwin Kruse, Fulbright & Jaworski, Houston, TX, Gilbert Irvine Low, Orgain Bell & Tucker, Beaumont, TX, for defendants British Gas P.L.C., Jack L. Gregory.

David T. Harvin, Vinson & Elkins, Houston, TX, for defendant British Petroleum Exploration Operating Co. Ltd.

D. Allan Jones, Orgain Bell & Tucker, Beaumont, TX, for defendant Atlantic Richfield Co. Inc.

Gary W. Coker, Offerman Coker & Koniuszy, L.L.P., Beaumont, TX, for defendant Transworld Resources Corp.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

SCHELL, Chief Judge.

Before this court is Plaintiffs' Motion to Remand, filed on September 8, 1994. After this court granted an agreed motion to seal the parties' exhibits, Defendants' response was timely filed on October 13, 1994.[1] A reply thereto was filed on November 3, 1994, and a "counter-reply" was filed on November 14, 1994. Upon consideration of the motion, responses, and attached exhibits and memoranda of law, the court is of the opinion that the motion should be GRANTED.

## BACKGROUND

The case underlying this removal battle is an involved and complicated dispute between Western corporations over rights to develop mineral resources located in the Republic of Kazakhstan. The weapons in this removal fight are the mountains of briefs and affidavits. The ammunition includes fraudulent joinder, procedural hurdles for removal, Texas choice of law principles, Texas tort law, Kazakhi tort law (and translations thereof), federal question jurisdiction over state law claims presenting a federal issue, federal common law governing international relations, the "act of state doctrine," and the *Erie* doctrine. *Grynberg Production Corp. v. British Gas, P.L.C.*, 817 F.Supp. 1338, 1341–42 (E.D.Tex. 1993) (*First Grynberg*). The battle continues.

Plaintiffs, having lost the above-described skirmish, returned to the field shortly thereafter, with mixed results, in *Grynberg Production Corp. v. British Gas, P.L.C.*, 149 F.R.D. 135 (E.D.Tex.1993) (*Second Grynberg*). Again denied remand in that decision, Plaintiffs chose to voluntarily dismiss their complaint without prejudice. *Id.* at 139.

There was not much peace in the valley:

This court has received four *Grynberg* cases [in two sets,] all based on the same facts. 1:93–CV–159 and 1:93–CV–195 were remanded.[2] 1:92–CV–496 and 1:93–CV–169 were successfully removed. [*First Grynberg*]. 1:92–CV–496 was voluntarily dismissed. [*Second Grynberg*]. After seeking a series of continuances in 1:93–CV–169, the parties informed the court that they had settled that case. An agreed judgment ordering dismissal with preju-

---

1. Although only the attorneys for Defendant British Gas P.L.C. have signed these pleadings, the court may safely assume that the arguments are advanced on behalf of all Defendants.

2. On, respectively, June 9 and June 30, 1993.

dice was entered in 1:93–CV–169.[3]  One week later, Plaintiffs amended their pleadings in the two state court actions (the former 1:93–CV–159 and 1:93–CV–195), disposing of the old claims and alleging in their place claims for breach of the settlement agreement.

The defendants removed again to this court.  The alleged bases for removal jurisdiction are diversity jurisdiction and jurisdiction based on the court's "inherent power" to enforce the judgment entered in 1:93–CV–169.

February, 1994 Memorandum Opinion Granting Plaintiffs' Motion to Remand Cases 1:93–CV–561 and 1:93–CV–562, at 1–2 (*Third Grynberg*) (attached hereto as Appendix "A").

Like the proverbial "bad penny", this dispute once again turns up in this court as *Fourth Grynberg*.  Though military only through metaphor, the similarities continue—for, as during the pendency of any protracted campaign, the passage of time has allowed the fabrication of different and more sophisticated weapons.  Defendants' "heavy artillery" this time is the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, *reprinted at* 9 U.S.C. § 201 *et seq.*

## FACTS

Critical to the so-called "settlement" which the parties announced in conjunction with 1:93–CV–169 is a certain six-page "settlement communication" dated July 19, 1993, and signed by Plaintiffs and British Gas ("BG").  Although the document has been placed under seal by this court, it may be fairly said that it is a multi-faceted agreement.  Unlike some settlements—which consist of little more than a core promise to pay a sum certain buried within paragraphs of

release-type legal boilerplate—the instant (single-spaced) agreement addresses a number of issues peculiar to the petroleum exploration and production industry.

The "settlement communication" is printed under Plaintiffs' letterhead,[4] and reads in part:

Please acknowledge that this correctly reflects our entire agreement with respect to the subject matter hereof by signing this letter in the space provided below and returning a signed copy.  Of course, if there are any changes you wish to discuss, please call me [Jack Grynberg] immediately or have your attorneys call ours.  Meanwhile, your attorneys should commence drafting the necessary additional documents and submit them to our counsel for comment as soon as possible.  We are hopeful that all the necessary paperwork can be completed and signed within the next thirty days.

"Settlement Communication" at 5.  This agreement was indeed signed by the parties, and it is not disputed that there is no mention whatsoever of arbitration therein.

The first reference to arbitration appears in an unsigned revised "settlement communication" sent by BG to Plaintiffs on July 24, 1993.[5]  This proposal adds to the previously agreed-to terms a suggestion that the following sentence be included: "All disputes arising under this letter agreement or the Settlement Agreement shall be settled by a mutually acceptable expert or submitted to arbitration."  Unsigned Proposed Revised Settlement Agreement dated July 24, 1993, at 6.  In its response, Plaintiffs suggested that the parties concentrate on drafting a separate, global Final Settlement Agreement instead of attempting to amend the "settlement communication" in a piecemeal fashion.  Plaintiffs also wrote that:

---

**3.**  On October 22, 1993.

**4.**  Although Grynberg Production Corporation and Pricaspian Development Corporation are the named Plaintiffs herein, they are functionally identical for the purposes of this motion.  Jack Grynberg is the President of the two corporations; indeed, he signed the "settlement communication" on behalf of both.

**5.**  It is indeed curious that this document is also on Grynberg letterhead; there is no doubt, however, of the fact that the changes indicated therein were proposed by BG.  *See* July 26, 1993 Letter from Plaintiffs' counsel to BG counsel at 1 ("Subject to a few matters noted below, I have no problem with the revisions to the settlement letter set forth in your red-line version dated 24 July.").

The arbitration idea is very sensible, although we'll wish to explore venue and applicable rules in the definitive agreement drafting.

July 26, 1993 Letter from Plaintiffs' counsel to BG counsel at 3.

By September 22, 1993, there existed a 55–page proposed Settlement Agreement drafted by BG. Sections 10.02 and 10.04 of that agreement included a broad-form arbitration provision looking to UNCITRAL Arbitration Rules and envisioning a Stockholm, Sweden site and the use of Swedish substantive law.[6] Plaintiffs agreed to review the document and submit any proposed changes. During this time, however, notes of dissension began to ominously appear within the parties' communications.[7]

On December 10, 1993, BG finally received a five-page memorandum which begins: "Grynberg Production Corporation has the following thoughts in respect of the 22 September draft." Regarding the arbitration section, the letter reads as follows:

> Section 10.02 We continue to believe that the appropriate governing law is the law of Texas.

> Section 10.04 We continue to believe that the appropriate arbitration site is Texas.

December 10, 1993 Letter from Plaintiffs' counsel to Defendants' counsel, at 4.

Subsequent events relating to §§ 10.02 and 10.04 may be summarized as follows:

---

6. "UNCITRAL" is the United Nations Commission on International Trade Law.

7. *See, e.g.,* November 3, 1993 letter from Jack Grynberg to Mike Alexander, Vice–President of BG:
   > During the two and one half hour conference call we had three weeks ago, we could not obtain progress on even the smallest of my objections. It's true that I would like to give you additional comments and resolve the settlement agreement issues, and I will do my damndest to get my comments to you in writing before the 15th of November. The hang-up is not my additional comments, however, but instead the lack of progress upon any of my earlier comments.

8. A redacted copy of the letter reads as follows:

---

12/20/93: In a document entitled "Package Proposal", BG proposes a Bermuda forum at which English law would be applied.

1/21/94: In a suggested "package resolution", Plaintiffs propose a Calgary forum and Alberta law.

3/21/94: BG sends a 73–page draft Settlement Agreement which reflects a Calgary forum, Alberta law, and use in arbitration of the Model Law on International Commercial Arbitration as adopted by Alberta.

4/1/94: Plaintiffs send six pages of comments on the March 21 draft. None of the comments pertain to the arbitration provisions.

4/25/94: BG sends a 72–page draft Settlement Agreement. No change is made to the arbitration provisions.

5/3/94: Three pages of comments and proposed changes, unrelated to the arbitration provisions, sent by Plaintiffs.

5/4/94: Five pages of comments and proposed changes, unrelated to the arbitration provisions, sent by BG.

5/4/94: Plaintiffs' counsel FAXes a two-page letter to BG in anticipation of a final "hammering-out" session to have been held in London shortly thereafter. No mention is made of the arbitration provisions.[8]

Hopes of an amicable resolution quickly unraveled, however. Later during the day

> Many thanks for your fax memorandum of May 4, which clears up a number of my misunderstandings. Based on your explanations, we can remove from the list:
>   [Omitted].
> This would leave, as London issues,
>   [Omitted].
> Jack [Grynberg] is leaving on Friday morning for London, so I'll be trying to get him a final issue list late Thursday afternoon. If there's anything you think should be added or subtracted to the foregoing, just let me know before Thursday afternoon.
> Absent that, I wish you a good trip and resolution of all outstanding issues in a manner that makes all parties happy.

on May 4th, BG drafted and sent to Plaintiffs a one page letter—with copies of the Alberta Arbitration Act and the UNCITRAL Arbitration Rules attached—suggesting two essentially non-substantive revisions to Section 10.04.[9]

By the end of the month, the dispute over arbitrability appears to have taken center stage, with each side carefully staking out its positions.[10] Needless to say, the vigorously-negotiated "Final Settlement Agreement" never came to pass; no agreement was signed by the parties.

On July 19, 1994, Plaintiffs filed a motion in state court to enforce the "settlement communication", contesting arbitration and insisting on a hearing. On August 12, 1994, shortly before that hearing was to have been held, the instant Notices of Removal and Arbitration were filed.

## DISCUSSION

Defendants' argument is, essentially, as follows:

This is not a case without a "completed, underlying contract." Under well-settled contract law, parties may agree to additional terms after the signing of a contract, such as the 1993 Settlement Letter. The exchange of promises to arbitrate is sufficient independent consideration.

The separability doctrine is clearly established for domestic arbitration disputes.[11] An agreement to arbitrate [under UNCITRAL] is broadly defined to include—as here—an agreement "contained in an exchange of letters or telegrams." Opposition at 7–11. BG concludes that Grynberg, having "agreed to arbitration" during the negotiations, is now bound by that agreement as it attempts to prosecute its action for breach of the original signed "settlement communication" agreement.

Grynberg's reply neatly exposes the key flaw in BG's argument:

If this Court accepts BG's proposition, then the ultimate trap for the unwary in commercial negotiations will be created. When negotiations over fundamental issues bog down, one party may simply propose agreement on a minor matter[:] the inclusion of dispute resolution language providing for arbitration. If the other party does not immediately object, then the first party may shut down the negotiations and submit the remaining issues to an arbitrator.

Reply at 13.

The fallacy of BG's argument is that it fails to distinguish between two critically different situations. Both begin with the parties executing a contract, and both end with a disagreement over whether arbitration is appropriate as regards a subsequent dispute relating to the first (executed) contract. In the numerous cases cited by BG, however, the arbitration provisions are contained in the original executed contract—here, the arbitration provision is in the *unexecuted* agreement.

---

**9.** The revisions attempted to precisely clarify the interrelationship between Alberta substantive law, the UNCITRAL Model Law, and the UNCITRAL Arbitration Rules.

**10.** *See, e.g.:*

5/17/94 Letter/memo from Plaintiffs' counsel to BG ("My understanding is that BG and GPC agreed that the disputed points would be resolved by the court in Texas under some sort of submission agreement or motion prepared by the parties' litigation counsel. Mr. Grynberg indicates that the points GPC would like to have included in this judicial resolution are …");

5/18/94 FAX from BG to Plaintiffs' counsel ("I was surprised to read [the above excerpt],

as it reflects a fundamental misunderstanding …");

5/18/94 FAX from Plaintiffs' counsel to BG ("If these points are not secured, then GPC wishes to have all three issues considered by the court.");

5/20/94 FAX from BG to Plaintiffs' counsel ("Our records show that choice of law and arbitration provisions in the most recent drafts of the Definitive [Settlement] Agreement have long since been placed in the 'agreed upon' box.").

**11.** *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (claim that entire contract induced by fraud did not prevent arbitration).

This is best demonstrated by an examination of the conclusion of BG's brief, which claims that "Grynberg's argument is little different from the plaintiff's claim rejected in" *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245 (2d Cir.), *cert. dism'd*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).

In 1987, the *Threlkeld* parties signed a preliminary agreement relating to the purchase and sale of certain metals forward contracts. As with the instant "settlement communication", the preliminary agreement contemplated a more formal agreement in the future. That signed preliminary agreement stated that the final agreement would be subject to arbitration under English law. *Id.* at 247. Moreover, subsequent written confirmations exchanged between the parties made specific reference to the rules and regulations—which included arbitration provisions—of the London Metal Exchange. *Id.* Based on these prior agreements, the Second Circuit ruled that a lawsuit brought regarding an agreement relating to the valuation of the forward metals contracts should be subject to arbitration even though the sued-on agreement was silent regarding arbitration.

In this case, however, the claimed arbitration agreement is derived only during the negotiations over the unexecuted Final Agreement. The preliminary "settlement communication" in this dispute makes no mention of arbitration, and the Final Agreement was never agreed to. Timing may not be everything in life—but it is decisive in this court's ultimate resolution of Plaintiff's motion.

BG's brief is littered with cases which follow the *Threlkeld* paradigm.[12] It has cited no Fifth Circuit authority which would compel denial of the motion, and this court is therefore free to disagree with those courts which have endorsed BG's argument.[13]

## CONCLUSION

This order disposes of the fourth generation of removed *Grynberg* causes, and it appears (for the time being) that this court will not be called on to address the merits—buried, fittingly, far below the layers of jurisdictional squabbles which have frequently occupied this court's time and attention. That is perhaps fortunate; the titanic battles over the mile-or-so which separates the Federal Building from the Jefferson County Courthouse hint at litigational resources so nearly unlimited that they threaten to overwhelm a mortal judge's docket.[14] The court further questions whether the perceived tactical benefits of these eleventh-hour removals and short-lived federal-suit-terminating settlements outweigh their costs.

Having found no "agreement to arbitrate" as required to invoke the provisions of 9 U.S.C. §§ 1 *et seq.* and 9 U.S.C. §§ 201 *et seq.*, Plaintiffs' Motion to Remand is hereby GRANTED. As this court has no subject-matter jurisdiction over these consolidated actions, they are ordered REMANDED pursuant to 28 U.S.C. § 1447(c) to the state district court from which they were removed.

---

**12.** *See, e.g., Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1406 (9th Cir.1989) (arbitration language included in document which, although stating "DRAFT" on front page, was signed by both parties and governed relationship immediately thereafter); *Sauer–Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 349 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984) (arbitration language included in distributorship agreement signed by both parties; lawsuit based on alleged repudiation of distributorship contract); *Oriental Commercial and Shipping v. Rosseel, N.V.*, 609 F.Supp. 75, 77 (S.D.N.Y.1985) (arbitration language included in telex containing terms of the agreement sued upon).

**13.** *See, e.g., Matter of Arbitration between Herlofson Mgt. A/S and Kingdom of Jordan*, 765 F.Supp. 78, 85 (S.D.N.Y.1991) ("Drafts of a contract, reflecting an agreement to arbitrate, can provide the requisite writing.") (citing *Marion Coal Co. v. Marc Rich & Co.*, 539 F.Supp. 903, 907 (S.D.N.Y. 1982)).

**14.** One can only conjecture, for instance, at the time, cost, and effort involved in rousing Howard M. Holtzmann—the U.S. delegate to the U.N. Commission which drafted the UNCITRAL Model Law—from his Midtown Manhattan doings to execute in London a sixteen-page opinion attached to BG's Opposition.

APPENDIX A

IN THE UNITED STATES
DISTRICT COURT

FOR THE EASTERN DISTRICT
OF TEXAS

BEAUMONT DIVISION

Grynberg Production Corp.,
et al., Plaintiffs,

vs.

British Gas, P.L.C., et al., Defendants.

1:93–CV–561

Grynberg Production Corp.,
et al., Plaintiffs,

vs.

British Gas, P.L.C., et al., Defendants.

1:93–CV–562

**MEMORANDUM OPINION AND OR-
DER GRANTING PLAINTIFFS'
MOTION TO REMAND**

Before the court is Plaintiffs' Motion to
Remand. The court, after considering Plain-
tiffs' Motion to Remand, British Gas PLC
and Jack L. Gregory's Opposition, BP Explo-
ration Operating Company's Response, the
evidence, and the law, is of the opinion that
plaintiffs' motion should be GRANTED.

This court has received four *Grynberg*
cases, all based on the same facts. 1:93–CV–
159 and 1:93–CV–195 were remanded. 1:92–
CV–496 and 1:93–CV–169 were successfully
removed. 1:92–CV–496 was voluntarily dis-
missed. After seeking a series of continu-
ances in 1:93–CV–169, the parties informed
the court that they had settled that case. An
agreed judgment ordering dismissal with
prejudice was entered in 1:93–CV–169. One
week later, Plaintiffs amended their plead-
ings in the two state court actions (the for-
mer 1:93–CV–159 and 1:93–CV–195), drop-
ping the old claims and alleging in their place

claims for breach of the settlement agree-
ment.

The defendants removed again to this
court. The alleged bases for removal juris-
diction are diversity jurisdiction and jurisdic-
tion based on the court's "inherent power" to
enforce the judgment entered in 1:93–CV–
169.

**Diversity Jurisdiction**

Defendants urge jurisdiction based on
complete diversity of the parties. A prereq-
uisite to such jurisdiction entails a finding
that Jack Gregory, a nondiverse defendant, is
fraudulently joined. Plaintiffs argue that
Gregory is not fraudulently joined as there is
a possibility of a cause of action against him
under Texas[1] law. Specifically, plaintiffs ar-
gue that Gregory is a proper party to a
judicial declaration that the settlement
agreement which releases claims against him
is effective, and that Gregory has no right to
dismissal of claims until British Gas performs
its obligations under the settlement agree-
ment. Plaintiffs also argue that Gregory, as
a third party beneficiary, could sue to en-
force the settlement agreement which was
made for his benefit as well as that of British
Gas. Thus, they argue, he is a suitable party
to a declaratory judgment action.

Defendants counter by pointing out that
the judgment entered in 1:93–CV–169 is res
judicata. They contend that Gregory did not
sign the settlement agreement, has no obli-
gations under it, and that the plaintiffs con-
tractual promise to dismiss Gregory is exe-
cuted, not executory. Their argument,
boiled down to its essence, is that the settle-
ment agreement is already effective as to
Gregory, and despite any conflict over its
terms, Gregory has already been dismissed.
Therefore, while Gregory could have sued to
enforce the contract, and may have been a
proper party to a declaratory judgment ac-
tion while the obligations to him were execu-
tory, all obligations to him have already been
irrevocably fulfilled. Claiming that "no mat-
ter what interpretation this Court gives to

---

1. The court does not decide whether Texas or
English law governs resolution of the contract.
If a cause of action lies against a nondiverse
defendant under any colorable body of law, then
the defendant is not fraudulently joined because

the choice-of-law question is itself an uncertainty
of law resolved in favor of the plaintiff. *Grynberg
Prod. Corp. v. British Gas P.L.C.,* 817 F.Supp.
1338, 1350 (E.D.Tex.1993).

the Settlement Agreement, Gregory's position cannot be affected or changed," Opp. of British Gas & Gregory at 8, Defendants conclude that Gregory is an unnecessary party to any declaratory judgment action.

The court is unable to pass on these arguments because the court does not have the settlement agreement before it. The court cannot say whether Gregory is a signatory. The court cannot say whether Gregory has continuing obligations under the contract. Wishing to maintain confidentiality, the parties have not submitted the settlement agreement to the court in this action.[2] Rather, they have rested on mere arguments and averments as to the terms of the contract. But this is insufficient; the contract must speak for itself.

A claim of fraudulent joinder must be supported by clear and convincing evidence. *Parks v. New York Times Co.,* 308 F.2d 474, 478 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964). The defendants bear the burden of demonstrating fraudulent joinder. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545 (5th Cir.1981). In carrying this burden, a process similar to that used in determining summary judgment motions is used. *Id.* at 549 n. 9. Defendants "may submit affidavits and deposition transcripts; and in support of their motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint." *Id.* at 549. The district court must then evaluate all contested issues of substantive fact and all uncertainties of controlling substantive law in favor of the plaintiff. *Id.* An evidentiary hearing is not required. *Id.* at 551. Here the defendants have not submitted appropriate evidence establishing that

Gregory has no obligations under or interest in the settlement agreement. Thus, the defendants have failed to carry their burden of establishing fraudulent joinder.

The court realizes that this technical application of the rules may put defendants to a hard choice. The lawyers for defendants may want and need to maintain the confidentiality of their clients' settlements to maintain competitiveness in the global oil market. However, this court is bound, too. If the defendants do not carry their burden, then the court must find that joinder is not fraudulent.

### Jurisdiction Based on the Court's Inherent Powers

Defendants alternatively urge the court to take jurisdiction based on the court's inherent power to enforce its judgments. However, no party has filed a Rule 60(b) motion to re-open 1:93–CV–169, the Grynberg case in which settlement was entered. Rather, British Gas and Gregory wish the court to take jurisdiction over the former 1:93–CV–159 and 1:93–CV–195, cases which were previously remanded by this court for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c), based on a settlement agreement signed in a different action.

While the court clearly has inherent power to enforce settlement agreements made in *pending* cases, *White Farm Equip. v. Kuppcho,* 792 F.2d 526, 529 (5th Cir.1986), the inherent jurisdiction to enforce settlement agreements *after* a case is disposed of exists only in certain circumstances. *See* Adrian N. Roe, *The Jurisdictional Pitfalls of Settlement,* LITIGATION, Vol. 19, No. 4, at 31 (summarizing lines of authority). For the case at bar, the only relevant[3] application of these

---

2. The court knows that British Gas and Gregory moved the state court to place the settlement agreement under seal. However, Eastern District General Order 92–27 (12/4/92) requires that

> upon removal of a case from state court to the U.S. District Court, parties re-urge any [state-filed] motion(s) requiring the attention of the judicial officer assigned to the case.
>
> It is FURTHER ORDERED that the re-urging of such motions be in compliance with Article Four, "Motion Practice," of the Civil Justice Reform Act Plan (CJRA Plan) and its addendums.

> Absent re-urging, said motions are hereby held to be moot.

The parties have not submitted the settlement agreement to this court or re-urged their state-filed motion to place the contract under seal.

3. British Gas and Gregory tell the court that its order of dismissal "contemplates a continuing supervision" over the settlement agreement. Opp. British Gas & Gregory at 10. This is simply not true. If the court meant to maintain continuing jurisdiction over the settlement agreement, it would have said so clearly and defini-

rules comes from *Ho v. Martin Marietta Corp.,* 845 F.2d 545 (5th Cir.1988). That court held that if a court had jurisdiction in a case, then the court has jurisdiction to enforce and interpret any consent decree entered in the case even after that case is no longer pending. *Id.* at 548.

A settlement becomes a consent decree for purposes of *Martin Marietta* when the judgment or the record contains the essential terms of the settlement agreement. *Matison v. White,* 760 F.Supp. 109, 112 (S.D.Miss. 1991), *citing White Farm,* 792 F.2d at 529. This rule is gleaned from *Kupcho* and *Martin Marietta.* "A settlement agreement is a contract, but, when incorporated into a judgment, becomes a court decree." *Kupcho,* 792 F.2d at 529. "Once incorporated into a judgment, federal courts have inherent authority to enforce the judgment and to determine whether there is good reason to vacate or modify the judgment." *Id.* at 530. *Martin Marietta* contemplated this rule as well. The plaintiff appeared before the district court *to have the settlement agreement entered as a judgment. Martin Marietta,* 845 F.2d at 546; *see also id.* at 548 n. 4 ("judicially enforceable consent decree embod[ies] the settlement").

Further, in *Kupcho,* the court had given its imprimatur on the settlement and consent decree. "The court found that it had accepted the settlement agreement in resolution of the case, that the parties had agreed to all material elements, and that its judgment accurately reflected the substance of their agreement." *Kupcho,* 792 F.2d at 530. During trial, the parties in Kupcho orally dictated the agreement into the record before the court. *White Farm Equip. Co. v. Kupcho,* SA–84–CA–0695 (W.D.Tex. June 10, 1985) (final judgment). The court enforced the terms appearing in the record and incorporated those same obligations into its final judgment. *Id.*

Federal courts need to strike a balance between the obvious practical need for enforceable settlements and the dangers of improperly expanding federal court juris-

diction. A reasonable approach—supported by the decisions on collateral proceedings and inherent powers—would limit federal court enforcement of settlement agreements to instances where a breach of a settlement agreement challenges the institutional integrity or dignity of federal courts.

... A likely benchmark would be the degree to which the judge was involved in the settlement process. If the trial judge actually participated in settlement discussions or an action has been settled on the eve of trial, a federal court has a substantial institutional interest in assuring that the parties comply with the settlement agreement. In contrast, if a case was settled long before trial without court involvement the court has less interest in enforcing the settlement.

*Jurisdictional Pitfalls, supra* page 5, at 35.

Parties relying solely on the court's inherent powers to enforce a settlement agreement after dismissal must incorporate the essential terms of the settlement into the judgment or place the terms of the agreement into the record in some other manner which reflects the court's official sanction of the settlement agreement. As stated by the court in *Kupcho,* "a federal court may hold [the parties] to their word by incorporating the *terms* of their agreement into a final judgment." *Kupcho,* 792 F.2d at 530 (emphasis supplied).

Here, the *terms* of the settlement agreement in 1:93–CV–169 were not incorporated into the final judgment ordering dismissal with prejudice. While Gregory and British Gas moved for and received permission to place the settlement agreement under seal in 1:93–CV–169, *the parties never filed the agreement with the clerk of the court.* The court never was actively involved in the settlement process or otherwise gave its approval to the precise terms of settlement. The parties merely claimed that they had settled, had entered into a binding contract, and wished to dismiss the case. The court took them at their word. The pleadings in the cases removed from state court present a state law contract claim with no federal ques-

tively. Thus, this case is not within the rule of *Kupcho.*

tion present. Further, as the court has previously held in several of the cause numbers involved in this barrage of *Grynberg* filings and removals, complete diversity is absent. Thus, the court lacks subject matter jurisdiction,[4] and remand is appropriate under 28 U.S.C. § 1447(c).

It is therefore ORDERED that Plaintiffs' Motion to Remand is GRANTED pursuant to 28 U.S.C. § 1447(c). The clerk of the court shall remand 1:93–CV–561 and 1:93–CV–562 to the 60th Judicial District Court of Texas in Beaumont, Texas.

Signed this 11th day of February, 1994.

/s/ Richard A. Schell
Richard A. Schell
United States District Judge

---

4. Defendants have also urged jurisdiction based on the All–Writs Act, 28 U.S.C. § 1651, and the Anti–Injunction Act, 28 U.S.C. § 2283. These acts are not independent sources of jurisdiction. *Matter of Mooney Aircraft, Inc.,* 730 F.2d 367 (5th Cir.1984) (Anti–Injunction Act not a basis for jurisdiction); *Brittingham v. Commissioner,* 451 F.2d 315 (5th Cir.1971) (All–Writs Act not basis for jurisdiction).