# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2023

Lyle W. Cayce
Clerk

_____

No. 21-20628

_____

FIDELIS JOHNSON BADAIKI,

*Plaintiff—Appellant*,

*versus*

CAMERON INTERNATIONAL CORPORATION,

*Defendant—Appellee*,

CONSOLIDATED WITH

_____

No. 22-20071

_____

FIDELIS JOHNSON BADAIKI,

*Plaintiff—Appellant*,

*versus*

SCHLUMBERGER HOLDINGS CORPORATION; SCHLUMBERGER LIMITED; SCHLUMBERGER TECHNOLOGY CORPORATION; CAMERON INTERNATIONAL CORPORATION; PAAL KIBSGAARD; OLIVIER LE PEUCH; STEVE MCKENZIE; JAMILAH CUMMINGS; MARISA HENNING; JOHN CORKHILL; NATHAN COOPER; RAY ARBOR; JAY JURENA; ED GAUDE; HENRY WEISSENBORN,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:19-CV-371, 4:20-CV-2216

---

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Appellant Fidelis Johnson Badaiki worked for Appellee Cameron International Corporation, a wholly owned subsidiary of Appellee Schlumberger Holdings Corporation, from 2007 to 2016. After Badaiki was laid off, he initiated three lawsuits in state court against Cameron, Schlumberger, and individuals associated with the company. Appellees removed two of the cases to federal court.

The district court dismissed both suits after determining that the parties entered into a binding settlement agreement under which Badaiki agreed to dismiss "all claims" against Cameron and Schlumberger in "all cases" in exchange for defendants' agreement to forgo attorneys' fees in those actions. Badaiki, proceeding pro se, now appeals the district court's dismissal of these cases.

We find that the parties entered into a binding settlement agreement which moots all issues on appeal. We dismiss the cases for lack of Article III jurisdiction.

## I.

Appellee Cameron International Corporation is an oil and gas company that is wholly owned by Appellee Schlumberger Holdings Corporation. In 2007, Cameron hired Appellant Badaiki as a senior designer

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

for its Drilling Systems unit out of Houston, Texas, but Badaiki was laid off on March 3, 2016.

## A.

On December 12, 2018, Badaiki sued Cameron in Texas state court, asserting claims of unlawful retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 ("*Badaiki I*").[1] Cameron removed the case to federal court. Cameron and Badaiki later filed cross motions for summary judgment. The motions were referred to a magistrate judge who recommended the district court grant Appellees' motion for summary judgment. On November 26, 2021, the district court adopted the magistrate judge's recommendations and granted summary judgment to Cameron. Badaiki appealed the order on November 30, 2021 but also filed a motion to amend the judgment pursuant to Federal Rule of Civil Procedure 59 on December 10, 2021.

## B.

While *Badaiki I* was pending, Badaiki filed a second suit in state court on February 28, 2020, which was removed to federal court ("*Badaiki II*").[2] After Appellees moved to dismiss Badaiki's amended complaint, the magistrate judge recommend the district court grant Appellees' motion. The

---

[1] Badaiki's original complaint named Cameron International Corporation and Schlumberger Company as defendants. Cameron moved to dismiss Badaiki's complaint on the basis that his claims were time-barred. The district court granted the motion in part and dismissed all claims "concerning acts or omissions committed by Cameron that precede February 25, 2016," as well as all claims against defendant Schlumberger Company.

[2] Badaiki amended his petition on or around June 8, 2020, and again on July 21, 2020. As amended, Badaiki asserted claims against fourteen defendants, including: (1) Schlumberger Holdings Corporation; (2) Schlumberger Limited; (3) Schlumberger Technology Corporation; (4) Cameron; and (5) ten individuals associated with the companies.

district court adopted the recommendations and dismissed Badaiki's claims with prejudice on November 26, 2021. On December 23, 2021, Badaiki moved to amend the judgment. Before the district court could rule on his motion, Badaiki appealed the dismissal order.

## C.

While both of Badaiki's motions to amend were pending before the district court, the parties settled their dispute. On December 21, 2023, Appellees' counsel sent Badaiki the following email with subject line, "Cameron-Badaiki: Settlement Offer made pursuant to TRE 408 and FRE 408":

> I have talked with my clients, and in exchange for a complete release on all claims in all cases you have filed, my clients will agree to forego pursuing their award of attorneys' fees in the state court action and two federal court actions. As you are aware, the state court has already awarded some fees, and we are confident that the federal courts will also grant our requests for fees, which are in excess of $200,000. Should you not accept this offer, we will move forward with executing on all judgments. I hope you give this offer serious consideration. This offer will expire if not accepted by December 25, 2021.

On December 25, 2021, Badaiki responded via email: "Accepted. We could discourse later."

The parties each filed notices of settlement. In his notice, Badaiki stated that "[t]he Defendant and Plaintiff Badaiki reach a settle [sic] by email," attached the December 21 email from opposing counsel, and concluded "[o]n December 25, 2021 email, Badaiki ACCEPTED the above Settlement Offer." After receiving the notices of settlement, the court stayed all deadlines until the parties filed their Rule 41 dismissals.[3]

---

[3] The trial judge was the same in both cases.

No. 21-20628
c/w No. 22-20071

Trouble shortly ensued. In January, Badaiki contacted Appellees and sought severance pay as part of the settlement agreement. Appellees refused on the basis that the severance pay was "never part of the settlement offer." That same month, Badaiki filed a motion in the district court and argued that it lacked jurisdiction to stay deadlines in the case.[4] Shortly thereafter, Appellees notified the district court that Badaiki "has agreed to resolve all litigation but has refused to sign a more detailed settlement agreement." In response, the district court ordered the parties to file their settlement paperwork by April 18, 2022. When the parties did not comply, the district court ordered the parties to appear for a hearing on May 9, 2022.

At the May 9, 2022, hearing, the trial court first found that it had jurisdiction to determine the validity of the settlement. Then, the court determined Appellees' December 21, 2021, email was a valid settlement offer and Badaiki accepted that offer in his December 25, 2022 response. The district court concluded that the settlement terms obligated Appellees to

_____

[4] First, Badaiki argued Appellees' motion to stay deadlines needed to be "jointly signed by all parties," and that the motion was defunct because it was only signed by Jim Nye, Appellees' counsel. Second, Badaiki contended the court "is without Plenary Jurisdiction to perform a FRCP 41 [sic], after this Court had already Dismissed this instant action with prejudice [sic] and the action is already on Appeal in the fifth circuit [sic]." Third, Badaiki asserted that the district court lacked jurisdiction because "All Removing Defendants" did not consent to removal because "a non-existing entity could not consent to nothing, in fact, both originally sued defendants were non-existing, ab initio." He concluded that "this instant case does not satisfy the case-or-controversy requirement of article III, this case is moot, and must be dismiss [sic] for mootness without adjudicating the merits of the case."

Badaiki further questioned whether the settlement agreement was valid because "[s]ettlement of actions is between the 'actual parties, clients' not between attorneys, here, James H. Nye is an attorney, and he is not the 'actual parties, clients,'" and accused Attorney Nye of "block[ing] Plaintiff Badaiki from negotiating and settling with the 'actual parties, clients.'" Badaiki went on to accuse Nye of "threaten[ing]" and "extort[ing]" him and called the "instant actions in this Court [a] modern-day Lynching of a Black man."

No. 21-20628
c/w No. 22-20071

forego any claims to attorneys' fees they may have in exchange for Badaiki's release of all claims against Appellees in all pending actions, including *Badaiki I* and *II* and the pending state court suit. On May 12, 2022, the district court issued a written order and final judgment dismissing *Badaiki I* and *II* with prejudice.

Badaiki continued to file motions for relief from judgment before the district court and amended his notices of appeal before this Court. On June 17, 2022, the district court denied Badaiki's motions for relief. This Court consolidated the appeals.

## II.

Badaiki now appeals multiple orders from *Badaiki I*, including: (1) the district court's January 27, 2021 order denying Badaiki's motion to compel mediation; (2) the district court's November 26, 2021 order adopting the magistrate judgement's report and recommendations and denying Badaiki's various motions, as well as the final judgment issued in pursuit thereof; and (3) the district court's proceedings on the May 9, 2022, order, and the final judgment entered in pursuit of the findings made at the proceeding.

As to *Badaiki II*, Badaiki appeals: (1) the July 20, 2020 notice of transfer indicating the case was transferred from Judge Gray H. Miller to Judge Charles Eskridge; (2) the district court's June 10, 2021 order adopting the magistrate judge's recommendation to deny Badaiki's motion to disqualify Judge Eskridge and Magistrate Judge Sheldon; (3) the magistrate judge's October 22, 2020 recommendation that Badaiki's motion to remand be granted; (4) the district court's November 20, 2020 order denying Badaiki's "Motion to Show Authority;" (5) the district court's January 8, 2021 order adopting the magistrate's amended recommendation to deny Badaiki's motion to remand; (6) the district court's December 6, 2021 order granting Badaiki's voluntary motion to dismiss several unserved defendants; (7) the district court's December 6, 2021 order adopting the magistrate

judge's recommendation to dismiss Badaiki's claims; and (8) and all orders issued pursuant to the May 9, 2022 hearing.

**A.**

We must first address Badaiki's contention that the district court lacked jurisdiction to evaluate the purported settlement agreement. "Subject matter jurisdiction is a question of law; our review is plenary."[5]

First, Badaiki asserts the district court lacked Article III standing because Appellee Cameron is "not real." This argument has no factual basis. As the district court found, Badaiki served Appellee Cameron with process, which could not have occurred if Cameron did not exist. Moreover, the record reflects that Cameron is real legal entity. Badaiki's related argument that Cameron, a "nonexistent entity," could not remove the case to federal court is meritless for the same reason.[6]

Second, Badaiki is incorrect that the district court lacked jurisdiction to review the "purported settlement email negotiation." Badaiki argues that the email exchange was "protected by FRE 408" and that the district court could not consider the exchange "without a separate federal question or diversity cases or controversy." As an initial matter, Federal Rule of Evidence 408 is inapplicable here. The Rule prohibits introducing evidence of a compromise to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."[7] Badaiki introduced the settlement to terminate litigation, not to "prove or disprove the validity or amount of a disputed claim or to impeach" another

---

[5] *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992).

[6] Furthermore, based on a review of the record, Cameron did not waive its right to removal.

[7] FED. R. EVID. 408(a).

party.[8] Moreover, under Rule 408(b), a court may admit compromise or settlement evidence for "another purpose," which includes determining the validity of that settlement.[9]

Finally, the district court retained jurisdiction notwithstanding its dismissal of *Badaiki I* and *Badaiki II* pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. Although "a dismissal ordinarily—and automatically—strips the district court of the power to hear that dispute,"[10] Badaiki's subsequent motions to amend the judgments under Rule 59 allowed the district court to retain its jurisdiction over the cases.[11] "It is well-established that a timely motion for reconsideration renders the underlying judgment nonfinal until the district court disposes of that post-judgment motion."[12] If this were not true, no district court could rule on Rule 59 motions. Therefore, the initial dismissals were not finalized, the district court retained jurisdiction over the cases, and it could properly determine whether a settlement agreement existed.[13]

---

[8] *Id.*

[9] Fed. R. Evid. 408(b).

[10] *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 451 (5th Cir. 2022) (citation and quotation omitted).

[11] *Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 868 (5th Cir. 2002) ("[U]ntil the district court addresses all post-judgment motions specified by the rule, it has not entirely finished with a case. On the contrary, a district court responding to a motion for reconsideration 'necessarily has discretion . . . to reopen a case' and may change its ruling on the merits.") (citation omitted).

[12] *Id.* at 867 (citing *United States v. Ibarra*, 502 U.S. 1, 5 (1991)); *see also* Fed. R. App. P. 4(a) (suspending time to file an appeal until the district court has disposed of specified post-judgment motions, including motions under Rule 59 and 60).

[13] For this reason, Badaiki's argument that the district court could not enforce the settlement pursuant to *Kokkonen v. Guardian Life Insurance. Co. of America*, 511 U.S. 375 (1994), is unpersuasive. *Kokkonen* held that federal district courts do not automatically have jurisdiction to enforce settlements. *Id.* at 378 ("Enforcement of the settlement agreement,

No. 21-20628
c/w No. 22-20071

**B.**

The next question is whether the district court abused its discretion when it found that the parties' December 21–25, 2021, email exchange constituted a binding settlement agreement.[14] Consistent with the district court's "inherent power to recognize" settlements, this determination is reviewed for an abuse of discretion.[15] "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."[16] We find that it did not abuse its discretion.

---

however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). This is logical. Settlements are contracts. Contracts are governed by state law. The settlement enforcement action in *Kokkonen* was akin to a breach of contract suit; as with any state law claim, the parties needed a jurisdictional hook to litigate in federal court. Thus, *Kokkonen* instructs that "the breach of an agreement that produced the dismissal of an earlier federal suit" is too "tenuous" to provide subject matter jurisdiction and did not fall within the court's ancillary jurisdiction. *Id.* at 379. Here, the district court retained its subject matter jurisdiction over the cases because its dismissals were not yet finalized.

[14] *See generally supra* note 30.

[15] *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995) (citation omitted) ("Federal courts have the inherent power to enforce settlement agreements entered into by the parties."); *Cia Anon Venezolana De Navegacion v. Harris*, 374 F.2d 33, 35 (5th Cir. 1967) ("Where the parties, acting in good faith, settle a controversy, the courts will enforce the compromise without regard to what the result might, or would have been, had the parties chosen to litigate rather than settle."); *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (citing *Harmon v. Journal Publ'g Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) and *Deville v. United States*, 202 F. App'x 761, 762 (5th Cir. 2006) as establishing the abuse of discretion standard for decisions to enforce a settlement agreement).

[16] *Wise*, 955 F.3d at 434.

9

No. 21-20628
c/w No. 22-20071

Settlement agreements are contracts,[17] and "once entered into, cannot be repudiated by either party and will be summarily enforced."[18] Whether the agreement is a valid contract is determined by the state substantive law governing contracts.[19] This case was heard in the Southern District of Texas, and Texas law applies. Under Texas law, contracts require: (1) an offer; (2) acceptance of that offer; (3) mutual assent to the terms, i.e., a "meeting of the minds;" (4) consent; and (5) that the contract be executed and delivered with the intent that it be mutually binding.[20] Finally, Texas law requires settlement agreements to "be in writing, signed and filed with the papers as part of the record."[21]

On December 21, 2021, Attorney Jim Nye emailed Badaiki and stated, "I have talked with my clients, and in exchange for a complete release on all claims in all cases you have filed, my clients will agree to forego pursuing their award of attorneys' fees in the state court action and two federal court actions." Badaiki responded via email, saying "Accepted. We could discourse later." At the May 9, 2022 hearing, the district court found that Attorney Nye acted as his client's agent and, as such, that his email was a

---

[17] *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1284 (5th Cir. 1989) ("The settlement agreement is a type of contract whose formation and goals are familiar to the court, and the parties were sophisticated and represented throughout by skilled counsel."); *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986) ("A settlement agreement is a contract, but, when incorporated into a judgment, becomes a court decree.").

[18] *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013) (citing *White Farm*, 792 F.2d at 530).

[19] *White Farm*, 792 F.2d at 529.

[20] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.27 (Tex. 2018).

[21] Tex. R. Civ. P. 11.

No. 21-20628
c/w No. 22-20071

valid settlement offer.[22] The court then determined that Badaiki "manifested an expressed [sic] acceptance of that settlement agreement" by responding "Accepted." Because Appellees provided valid consideration by foregoing any potential claims to attorneys' fees, the district court concluded the email exchange established a binding settlement agreement.

Badaiki failed to show that the district court's factual finding was clearly erroneous. Attorney Nye extended an offer and Badaiki unequivocally manifested his acceptance of the offer. To quote the district court: "one cannot enter into a contract and say, accepted, and then perhaps believe that that is not actually something that's binding."[23]

Furthermore, the parties' intent to be bound by the terms is evidenced by their subsequent filings in the district court.[24] On December 29, 2021,

---

[22] *See Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 669 (Tex. 2020) ("The common law has long recognized that an agreement can be expressed in multiple writings exchanged between the parties. Emails are such writings.").

Badaiki suggests the "protected private settlement email discussion between the Appellant and a purported counsel named Jim H. Nye" is not a binding contract because "FRE 408 said such document is not admissible and its use is prohibited." Federal Rule of Evidence 408 does not apply in this situation, *supra* Section II.A. Emails are evidence of contracts, *Chalker Energy*, 595 S.W.3d at 669, and the district court properly evaluated whether the elements of a contract were met, *supra* Section II.B.

[23] At the May 9, 2022, hearing, Badaiki disputed the validity of the agreement. However, his arguments were directed towards the underlying merits of the case, not whether a contract was formed.

[24] To the extent Badaiki contends the agreement lacked consideration, he is wrong. "The general rule is that mutual reciprocal obligations between contracting parties are sufficient consideration to create a binding contract." *In re Windsor Props., Inc.*, 987 F.2d 771 (5th Cir. 1993) (unpublished). "It is well accepted that the mere exchange of promises is ordinarily sufficient to satisfy the requirement of consideration." *Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 875 (5th Cir. 2005) (citing Claude D. Rohwer & Anthony M. Skrocki, Contracts in a Nutshell § 2.24 (5th ed. 2000)). Appellees pledged to forego any potential award of attorneys' fees in exchange for a Badaiki's release of claims in all pending litigation. This constitutes consideration.

No. 21-20628
c/w No. 22-20071

Badaiki filed a notice of settlement in *Badaiki I*; an identical notice was filed in *Badaiki II* on January 3, 2022.[25] In these filings, Badaiki informed the court of the settlement, attached the email exchange, and concluded "[o]n December 25, 2021 email, Badaiki ACCEPTED the above Settlement Offer." Appellees likewise filed notices of settlement which reflected their understanding that the parties settled.[26]

Finally, the district court did not abuse its discretion in finding that Badaiki released his claims in all pending suits.[27] The terms of the offer were clear: Appellees would forego any claim to attorneys' fees "in the state court action and two federal court actions" in exchange "for a complete release on all claims in all cases you have filed."[28] Badaiki unambiguously accepted these terms. In doing so, we concur that he "manifested . . . a complete release on all claims in all cases you have filed." Therefore, "[e]vidence was presented that, by all outward appearances, the settlement negotiations were

---

[25] On appeal, Badaiki contends that he provided a counteroffer on December 27, 2021. This argument is contradicted by Badaiki's December 29, 2021, and January 3, 2022 filings in which he stated that he accepted the settlement offer on December 25, 2021.

[26] Because the email exchange was in writing and filed by Badaiki in his notices of settlement, it is therefore part of the record. The agreement thus satisfies Rule 11 and is valid under Texas law. TEX. R. CIV. P. 11 ("Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.").

[27] The record indicates that Appellees attempted to formalize the agreement, but that Badaiki refused. Although parties often formalize their agreement, the email exchange was sufficient to establish a binding contract. *See Chalker Energy*, 595 S.W.3d at 669.

[28] Although Mr. Nye's email was sent to an address designated as "Maxwell Johnson," the record reflects that the johnson747@hotmail.com email address belongs to Badaiki.

No. 21-20628
c/w No. 22-20071

intended to resolve all claims and release the defendants from all liability relating to the subject matter of the suit."[29]

Therefore, the email exchange and notices of settlement evince an offer, acceptance, mutual assent to the terms, consent and intent to be bound by those terms.[30] "A deal is, of course, a deal,"[31] and a "settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced."[32] The record reflects Appellees upheld their end of the bargain. Badaiki was obligated to do the same. For that reason, the district court did not abuse its discretion in dismissing the suits with prejudice.[33]

## C.

Because the parties entered into a valid settlement agreement, this Court must determine whether the settlement deprives this Court of jurisdiction to address Badaiki's remaining issues on appeal.[34] Federal courts possess limited power, and our jurisdiction is limited to the "cases" and "controversies" defined by Article III of the United States Constitution.[35] "To qualify as a case fit for federal-court adjudication, an actual controversy

---

[29] *Bell*, 36 F.3d at 450.

[30] *See USAA Tex. Lloyds Co.*, 545 S.W.3d at 501 n.27.

[31] *Chalker Energy*, 595 S.W.3d at 669.

[32] *City of New Orleans*, 731 F.3d at 439 (citing *White Farm*, 792 F.2d at 530).

[33] Badaiki argues that the district court violated Federal Rule of Civil Procedure 41(a) by dismissing the case with prejudice without notifying Badaiki of his intent to do so. But the district court did not dismiss the case based on Rule 41(a). Instead, the case was dismissed because the settlement agreement mooted the issues and, by the terms of the agreement, required dismissal.

[34] *Goldin v. Bartholow*, 166 F.3d 710, 714 (5th Cir. 1999) ("We are obligated to address issues of jurisdiction, including mootness, prior to addressing the merits of an appeal.").

[35] U.S. Const. art. III § 2.

must be extant at all stages of review, not merely at the time the complaint is filed."[36] The mootness doctrine accounts for this requirement by "ensur[ing] that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit . . . including the pendency of the appeal."[37] "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents."[38]

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[39] Parties lack a legally cognizable interest in the outcome when "it is impossible for a court to grant any effectual relief whatever to the prevailing party."[40] Logically, then, "settlement of a dispute between two parties renders moot any case between them growing out of that dispute"[41] because once parties have "completely settled their differences, [] there is no relief left for us to award."[42] If the parties entered into a legally valid settlement agreement that resolves all claims in these cases, the appeals are moot, and this Court lacks jurisdiction to hear Badaiki's appeals.

---

[36] *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks omitted)).

[37] *See McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004) (quotation omitted).

[38] *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (citation omitted).

[39] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

[40] *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (citation omitted).

[41] *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. Unit B July 1981).

[42] *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 469 (5th Cir. 2020).

No. 21-20628
c/w No. 22-20071

Settlement extinguishes any live interests in a dispute.[43] The parties entered into a valid settlement agreement wherein Badaiki agreed to release "all claims" in exchange for Appellees forgoing their right to pursue attorneys' fees related to any successful defenses. The settlement mooted these cases, "no matter how vehemently [Badaiki] continue[s] to dispute the lawfulness of the conduct that precipitated the lawsuit."[44] Because the parties have "completely settled their differences, [] there is no relief left for us to award" and this Court lacks jurisdiction to consider Badaiki's remaining arguments on appeal.[45]

## III.

For these reasons, we AFFIRM the district court's dismissal of both *Badaiki I* and *Badaiki II*.

---

[43] *Already, LLC*, 568 U.S. at 91 (citing *Murphy*, 455 U.S. at 481); *ITT Rayonier*, 651 F.2d at 345.

[44] *Already, LLC,* 568 U.S. at 91.

[45] *Green Valley*, 969 F.3d at 469.